DET 40090

81

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RAJA RAJENDRAN,                                                )

5179 Shady creek drive, Troy, MI 48085                        )

Case: 4:22-cv-10001
Judge: Davis, Stephanie Dawkins
MJ: Altman, Kimberly G.
Filed: 01-03-2022 At 09:41 AM
CMP RAJA REJENDRAN V CHRISTINE WORMUTH (SS)

　　　　　　Plaintiff,

v.                                                            )

                                                              )   JURY DEMAND

CHRISTINE WORMUTH, Secretary, Department of                   )

the Army,                                                     )

                                                              )

　　　　　　Defendant.


---

## COMPLAINT

## JURY DEMAND

---

COMES NOW the Plaintiff, Raja Rajendran, and for his complaint against the Defendant, Christine Wormuth, Secretary, Department of the Army, states as follows:

### I.　　JURISDICTION

1.　　The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 and 1343. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil rights Act of 1964", as amended, including the Civil Rights Act of 1991. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of right secured by 42 U.S.C. § 1983 and 2000e *et seq.* providing for relief against unlawful discriminatory practices involving retention, compensation, and other terms and conditions of employment in failing to remedy systemic employment discrimination on the basis of race, national origin, and retaliation.

1

2.      The Plaintiff exhausted all administrative remedies and has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the Civil Rights Act of 1991, 42 U.S.C. 2000e *et seq*.

3.      The Plaintiff timely filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 18, 2010, alleging discrimination based on national origin (Asian/Indian). On December 23, 2010, the complaint was amended which the Defendant Agency accepted.

4.      After all necessary Agency investigation procedures were exhausted; Plaintiff requested a hearing before an Administrative Judge appointed by the EEOC in accordance with its regulations. A hearing was subsequently scheduled and held over four days: April 18, 2016; April19, 2016; May 19, 2016, and August 2, 2016.

5.      The Administrative Judge issued a decision on July 28, 2020, finding that no discrimination or reprisal occurred. An appeal was filed on August 28, 2020.

6.      On May 25, 2021, Plaintiff's appeal was denied, and the Agency's final decision was affirmed. Plaintiff timely filed a first Reconsideration Request on or about June 23, 2021, and this first Reconsideration Request was denied by decision dated October 12, 2021. Plaintiff filed a second Reconsideration Request on November 17, 2021, which was also denied.

7.      Plaintiff timely filed this Complaint within 90 days of when Plaintiff received the decision of the EEOC on the first reconsideration of appeal.

8.      Venue is proper in this Court 28 USC 1391(e)(1)(C) as a civil against an officer or employee of the United States or any agency thereof acting in official capacity may be brought in any judicial district in which the plaintiff resides if no real property is involved. Real property is not involved in this case.

## II.      PARTIES

9.      The Plaintiff, Raja Rajendran, residing at 5179 Shady creek drive, Troy, MI 48085, (hereinafter, "Plaintiff"), is over the age of nineteen, a citizen of the United States, a resident of the State of Michigan at all relevant times and was employed by the Defendant at all times material herein.

10.      The Defendant, Christine Wormuth, Secretary, Department of the Amy is the President's appointed chief representative of the United States Department of the Army[1]. At all times relevant to this suit, the Department of the Army was the employer for the purposes of Title VII and is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. 2000 e *et seq*.

## III.      FACTUAL ALLEGATIONS

11.      The defendant discriminated against Plaintiff Rajendran because of his race and national origin, in job assignments, wages, promotions, discipline and other terms conditions and privileges of employment.

---

[1] At the time of Plaintiff's initial complaint with the EEOC, John M. McHugh was the acting Secretary of the Army.

12.     Plaintiff, Raja Rajendran, was a Mechanical Engineer, GS-9, (carrier ladder FPL GS-11 on an acquisition position) at the Agency's Tobyhanna Army Depot facility. Plaintiff began his employment at Tobyhanna on March 15, 2009.

13.     Starting in April 2009, Plaintiff's first line supervisor was Chief, C3 Avionics Engineer Branch, Jeff Morman, and second line supervisor, was Chief of Maintenance Engineering Division, Mark Viola.

14.     Plaintiff several times requested training which were denied by the supervisors.

15.     Plaintiff filed an EEOC complaint.

16.     Plaintiff was to attend an EEOC mediation session on August 23, 2010 and forgot to sign in on that day. The Supervisor Mr. Morman considered this absence without leave and gave three (3) days suspension without pay, since Plaintiff's supervisor Mr. Morman was not aware about Plaintiff 's whereabouts during this time and just based on the assumption that the Plaintiff was not in the depot. This is not proper for this alleged offense. The three days suspension was deliberately chosen from Tuesday through Thursday to add difficulty, knowing that the plaintiff was commuting to work in Pennsylvania from Michigan during weekdays.

17.     Supervisor Mr. Morman stated that he would give to anyone an opportunity to explain regarding their whereabouts, but he failed to give Plaintiff an opportunity to explain.

18.     Another employee who was Caucasian did not sign in to roll call and was later reminded to sign in at noon and Mr. Morman indicated that if other employees did not sign in that he would remind them, however, Plaintiff was not reminded to sign in.

19.     That another Caucasian male employee received less discipline for multiple severe offense causing physical pain by kicking on the buttocks of a female employee and humiliated using sexually explicit language at the female employee was disciplined with a one-day suspension with pay.

20.     Plaintiff and the Agency entered into a Settlement Agreement (NSA) on or about January 20, 2011.

21.     That the Agency breached the Settlement Agreement and the EEOC ordered the Agency to notify Plaintiff to either (1) cancel the terms on the NSA and return the settlement payment, reinstated the EEOC case, and to offer Plaintiff the status quo position or (2) the agency to comply with the terms of the NSA and dismiss the EEOC case.

22.     The Plaintiff, expecting none other than status quo position, agreed to return the settlement money to the Agency within the timeframe and reinstate the EEOC case and to accept reinstatement to the status quo position with the Agency.

23.     Plaintiff's position with the Agency was reinstated in September 2013 to a non-status quo position and Agency failed to reverse other terms on the NSA, specifically reinstating of the grievance through labor union.

24.     Plaintiff received untruthful review on the Douglas factor, specifically on performance and getting along with other employees, which stated plaintiff was a poor performer and not getting along with other people. However, evidence shows Plaintiff was rated "excellent" on the annual performance review and positive comments/feedback from his peers stating, "nice guy", "gentleman" etc., and never a negative comment.

25.    Other Caucasian employees did not get along with other employees including one employee who swore at Plaintiff and bragged about it and yet this incident was not escalated by Supervisor Mr. Morman.

26.    Supervisor Mr. Morman accused Plaintiff of not attending training, however, Supervisor Mr. Morman placed stringent constraints, requiring Plaintiff to drive 1500 miles to and fro from his residence for a rental pickup and drop-off, on the training not applied to other Caucasian employees and failed to make proper reservations for training and then accused Plaintiff of missing training.

27.    That on August 27, 2010, Plaintiff requested a rental car and Supervisor Mr. Morman initially agreed to bear the cost but then this request was denied after the EEOC complaint was filed.

28.    After the complaint was filed Plaintiff's travel expenses were not fully reimbursed.

29.    For training starting on Monday at 7:00AM, Plaintiff was not allowed to leave from home, Plaintiff was required to leave from the depot on the weekend. However other employees were not forced this option and were given their own choice.

30.    Plaintiff was denied training that other similarly situated Caucasian employees were allowed to take.

31.    Plaintiff's position was downgraded from Mechanical Engineer (GS-09) to Engineering Technician (GS-07) after EEOC complaint was filed.

32.    In September 2013, Plaintiff discovered that it was not the status-quo position as Supervisor Mr. Morman had retaliated by not giving Plaintiff the status quo position as required and placing the Plaintiff in another branch "SATCOM" (58110) with a level of expectation set at GS 14 and with additional job functions/duties performed by a program analyst at GS 9 level while compensating the Plaintiff at GS 7 level, thereby constructively discharging the plaintiff by forcing resignation.

33.    The Plaintiff immediately prepared a non-compliance memo and submitted it in a timely manner in 2013 requesting that the Defendant comply with the order to reinstate.

## IV.    CLAIMS

### COUNT I – NATIONAL ORIGIN DISCRIMINATION-DISPARATE TREATMENT

34.    The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

35.    The Defendant discriminated against the plaintiff because of his national origin (Asian/Indian) in the terms, conditions, and privileges of employment.

36.    Plaintiff was not provided training, disciplined, given downgraded positions, given negative performance reviews than Caucasian employees.

37.    Plaintiff was disciplined and suspended for conduct wherein Caucasian employees were not reprimanded or suspended for the same or worse conduct.

38.    Defendant discriminated against Plaintiff due to his Asian/Indian national origin and retaliated due to his complaints of discrimination.

39.     Plaintiff Raja Rajendran is a member of a protected class.

40.     As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

## COUNT II – RETALIATION

41.     The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

42.     The Defendant retaliated against the Plaintiff for the Plaintiff's act of objecting to and reporting acts of national origin discrimination and harassment.

43.     When the Plaintiff reported and filed formal complaints of acts of discrimination and harassment, the Defendant retaliated against Plaintiff including but not limited to demoting the Plaintiff.

44.     The Defendant, by and through its agents, engages in the practices complained of herein with malice and/or reckless indifference to the Plaintiff's federally protected rights.

45.     As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

## COUNT III – HOSTILE WORK ENVIRONMENT

46.     The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

47.     The Defendant discriminated against the Plaintiff because of this national origin (Asian/Indian) in the terms, conditions, and privileges of employment as stated herein.

48.     Plaintiff was given less desirable positions and demoted and was wrongfully disciplined and harassed.

49.     Plaintiff was subjected to a hostile work environment because he was forced to endure the humiliation and embarrassment of not receiving the same benefits afforded to other similarly situated Caucasian employees.

50.     As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

## COUNT IV – BREACH OF SETTLEMENT AGREEMENT

51.     The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

52.    Plaintiff and the Agency entered into a Settlement Agreement on or about January 20, 2011. (A copy of the Agreement is in the possession of the Defendant)

53.    That the Agency breached the Settlement Agreement and the EEOC ordered the Agency to notify Plaintiff to either (1) cancel the terms on the NSA and return the settlement payment, reinstate the EEOC case, and to offer Plaintiff the status quo position, or (2) the agency to comply with the terms of the NSA and dismiss the EEOC case.

54.    The Plaintiff, expecting status quo position, agreed to return the settlement money to the Agency within the timeframe and reinstate the EEOC case and to accept reinstatement to the status quo position with the Agency.

55.    Plaintiff's position with the Agency was reinstated in September 2013 to a non-status quo position with compensation at GS-7 level and performance expectation at GS-14 level and additional duties at GS-9 level with job function of a Program Analyst.

56.    As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

57.    That Plaintiff complied with the terms of the Settlement Agreement and should be reinstated to his previous position with full pay, benefits and back pay and lost benefits.

## COUNT V - VIOLATION OF PROCEDURES

58. After the complaint was filed, disciplinary actions were taken when Plaintiff could not attend training beyond his control which is not punishable, which violates the procedure.

59.    Plaintiff was in a carrier ladder position (FPL GS11) and at the end of the first year was not promoted to a GS 11 position without and explanation or reason which is in violation of procedure.

60.    Recommending putting Plaintiff on PIP on a position even before the Plaintiff was in that position is in violation of procedure.

61.    Around Nov 2010 Supervisor Mr. Morman took action to remove the plaintiff from engineer role to technician without any reason against the recommendation of MER. Plaintiff was ultimately demoted to technician role at GS07 level around Dec 2010. Supervisor Mr. Morman did not want to keep plaintiff in an engineering slot. This is in violation of procedure.

62.  Unreimbursed travel expenses as follows:

1) April 20th, 2010, trip to Wilkes University to attend a symposium.

2) Comp time for a TDY trip to Phoenix AZ, on August 2-6, 2009

3) Comp time for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010

4) Travel mileage for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010

5) Hotel stay for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Plaintiff did not make this trip)

6

6) Toll charges for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Plaintiff did not make this trip)

7) Per diem for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Plaintiff did not make this trip)

8) Comp time for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010

9) Reduced compensation for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 (By altering Plaintiff's travel expense form)

10) Reduced hotel stay for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 (By altering Plaintiff's travel expense form)

11) Reduced per diem for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 (by altering Plaintiff's travel expense form)

12) Administrative leave for the travel time to attend a federal job interview at Picatinny, NJ on 9th Dec 2010.

63. Additional allegations and remedies sought are listed in the attached document "complainant's amended prehearing statement" as listed here.
There are numerous allegations concerning the Agency's failure to restore Plaintiff to his pre-NSA status quo, in violation of the Commissions' Order, including, but not limited to the following
a. Failing to reinstate Plaintiff to his pre-NSA position as a Technician under the C4ISR Maintenance Engineering Division, C3/Avionics Branch.

b. Failing to reinstate Plaintiff's union grievance.

c. Removed Plaintiff from an acquisition position and placed an unqualified person on that role.

d. Failing to reinstate Complaint for TDY and related trips.

e. Failing to change Plaintiff's annual leave to administrative leave for the time spent in attending interviews with other federal agencies.

f. Failing to pay for a 3-day suspension it agreed to do prior to the failed settlement agreement.

g. Failing to return Plaintiff's personal belongings, including CD's and DVD's.

h. Failing to give Plaintiff access to email and phone messages.

i. Failing to give Plaintiff access to all the information he had on his hard drive, including Villanova University class notes.

j. Failing to restore Plaintiff's moving expense reimbursement.

k. Removed Compliant from a ladder position.

## V.    DAMAGES

64. The plaintiff adopts and re-asserts each and every allegation previously stated as if fully set out herein.

65. The Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish, and loss wages (both back wages and future wages), lost benefits, as a consequence of the defendant's unlawful conduct.

66. The Plaintiff is seeking an unspecified amount of compensatory and punitive damages to be determined by the jury.

## VI.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.       Enter an Order requiring the Defendant to make the Plaintiff whole by awarding him reinstatement, lost wages (both back pay and future pay) plus interest, compensatory and punitive damages, loss of benefits, including retirement, pension, seniority, and other benefits of employment.

2.       Compensation that was listed as in the EEOC "complainant's amended prehearing statement" attached and shown here below (adjusted for inflation):

(Regardless of the outcome of this trial if the defendant is acquitted of discrimination) Plaintiff is requesting that the EEOC order dated 2 Feb 2013, must be complied with, including

a. Written apology from TYAD for using swear words when speaking to the Plaintiff and bragging about it during FFC on the record.

b. Re-instatement of Plaintiff's grievance through the Union submitted on 6 Jan. 2011.

c. Re-instatement of Plaintiff's status-quo position, if defendant is acquitted of discrimination, 108270-2086359 GS-802-07 technician in PED C4ISR Maintenance Engineering Division.

d. Lost wages because of the delay in executing the original EEOC order dated 31st Jan. 2013.

e. Lost wages due to Non-Compliance of the original NSA (January 21st, 2011, since signing of NSA till the original order is re-instated).

f. Reimbursement of all un-compensated/under-compensated travel related expenses.

g. Provide unpaid comp time for TDY and for attending federal job interview.

h. Reimburse cost incurred by Plaintiff including but not limited to attorney fees, travel costs and hotel accommodation for reinstating EEO the complaint.

i. Per the EEOC order, the administrative leave was converted to leave without pay (LWOP). With that, Plaintiff is eligible for all the benefits as an employee. TYAD included this amount to be paid back by Plaintiff in order to reinstate the EEO complaint. This amount must be paid back to Plaintiff.

j. TYAD offered Plaintiff an incorrect (non-status quo) position which he had to resign. TYAD must pay my benefits as an employee from the day Plaintiff signed the NSA until they offer the original status quo position.

k. Reverse the change of Service Computation Date (March 2005)

l. TYAD has to pay Plaintiff the cost of his relocation from Michigan (home) to Pennsylvania (TYAD) twice, since they offered him an incorrect (non-statuesque) position.

m. Reinstate union grievance.

n. TYAD should not have removed Plaintiff from ladder position. TYAD should place Plaintiff in ladder position

o. TYAD should not have removed Plaintiff from acquisition role. TYAD should place Plaintiff in acquisition role.

2. Loss of income from employment

a. On March 15th, 2010, Plaintiff should have been promoted to GS-830-11 without competition per his FPL.

b. Demotion and negative comments in the OPF, AWOL and suspension on the record at TYAD led to failed job interviews (GS-830-14 position) and ruined any possibility of employment, both Federal and private industry jobs. Plaintiff did not get selected for the GS-830-14 position at TARDEC even though he was a successful GS-830-13 (equivalent NH3) employee because of the reasons below:

i. Late notification from TYAD about the interview.

ii. Failed notification from TYAD about the interview since Plaintiff had provided his TYAD contact information (email id and phone number) for all the applied positions

iii. Plaintiff did not have the competitive advantage due to lack of training/certification.

iv. Discrimination and his reputation being ruined in the OPF with AWOL, suspension, and negative comments

v. TYAD abruptly removed access to federal emails, so Plaintiff could not receive any invitation to attend interviews.

vi. TYAD abruptly removed access to voice mail, so Plaintiff could not receive any notification about job interviews

vii. Above all, demotion from GS-830-09 to GS-802-07 (engineer to technician)

All W2s showing Plaintiff's only income earned after the discrimination, are attached.

c. Other lost job opportunities (unknown) resulting from the below:

i. Abrupt removal of access to US Army email messages, both online and archived,

ii. Access to US Army Voice Mail messages immediately following NSA signed Jan 20, 2011.

iii. TYAD also wiped Plaintiff's hard drive clean immediately following NSA. On March 11 2011, TYAD communicated via email that they will provide Plaintiff email access if he agrees to waive his rights to pursue formal or informal action in any forum concerning the email matters resolved by this agreement and he agrees that these email matters will not be made the subject of future litigation or complaint, formal or informal proceedings including but not limited to meetings, discussions, REDS, grievances, or any process regardless of how informal. Plaintiff did not sign the waiver because he was not in agreement with the conditions. On 28 Oct 2011, Plaintiff drove to TYAD, PA to access his email and retrieve all the information from the hard drive. TYAD Security let him in, however kicked him out immediately before he could even access my computer as soon as Management learned that he was in the premises.

Plaintiff seeks to be compensated at GS-830-11 from March 15th, 2010, till March 2011 and at GS-830-14 from then onward.

3. Plaintiff seeks to be offered a GS-830-14 acquisition position at TYAD

4. TYAD to offer all denied training

5. Annual Leave going forward for any federal position should be calculated based on original SCD date

6. Compensation for significant decrease in retirement income Plaintiff is seeking the difference in retirement benefits due to loss of employment and difference in SCD date including but not limited to

a. Pension benefits

b. 401K, TSP (Thrift Savings Plan) and any such benefits

7. All Attorney fees from 2011 to present including re-instating of his complaints after NSA was breached by TYAD.

8. Travel Expenses related EEO case including multiple trips to meet with attorneys.

9. Costs related to relocation from Michigan to Pennsylvania two times (2009 and 2013) and whenever Plaintiff joins TYAD again.

10. Dismissal of all the personnel who are found guilty of discrimination if they don't have the minimum qualification required for the position, they are in.

3.     The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

Raja Rajendran

5179 Shady creek drive, Troy, MI-48085

Email:rajendranfamily@hotmail.com

Dated: December 28, 2021

11

## Negotiated Settlement Agreement in the EEO Complaint of
## Raja Rajendran and the Department of the Army,
## DA Docket Number ARTYAD10JUL03318

1. On August 18, 2010, Mr. Raja Rajendran (Complainant) filed a formal EEO complaint. He alleged discrimination based on national origin. In the interest of promoting the principles of the Equal Employment Opportunity Program, the Department of the Army (Agency) and the Complainant agree to settle this complaint on the terms shown below.

2. By entering into this settlement, the Department of the Army does not admit that it or any official or employee has violated Title VII of the Civil Rights Act of 1964, as amended, the Rehabilitation Act of 1973, as amended, the Age Discrimination in Employment Act, as amended, the Equal Pay Act or any other Federal or State statute or regulation.

3. The Department of the Army and Complainant agree to the following:

a. The Complainant will be promoted from an Engineering Technician (Mechanical), GS-0802-07 to a Mechanical Engineer, GS-0830-09, Step 10. There will be no back-pay nor retroactive wages associated with this action. This action will be effective January 30, 2011 and the Request for Personnel Action (RPA) will be submitted to the Civilian Personnel Advisory Center (CPAC) prior to February 11, 2011.

b. Any and all disciplinary actions originating from the Complainant's employment at Tobyhanna Army Depot will be expunged from the Complainant's Official Personnel File (OPF) within 15-calendar days of the effective date of this signed settlement agreement. The Complainant will receive the lost wages he incurred from the three day suspension dated on December 13, 2010, and served on January 11, 2011-January 13, 2011. Within 30-calendar days of the effective date of this signed settlement agreement, the Agency will forward the request for payment to Defense Finance and Accounting Service (DFAS). Parties understand that DFAS, the agency responsible for disbursing funds, is a separate governmental agency and is therefore outside the authority of the Department of the Army.

c. The Complainant agrees to be placed on Administrative Paid Leave effective January 24, 2011 until July 30, 2011 and he will be placed on Leave Without Pay (LWOP) from July 31, 2011 to November 5, 2011.

d. The Complainant agrees to abandon any and all Union Grievances arising from his employment at Tobyhanna Army Depot and this decision on the Complainant's part is irrevocable.

e. No training will be provided to the Complainant after the date of this signed agreement.

f. Simultaneously with the execution of this agreement, the Complainant agrees to sign a Letter of Resignation which will be effective on November 6, 2011 terminating his employment with Tobyhanna Army Depot. This resignation is irrevocable. The Complainant shall notify



Rebekkah Morgenweck immediately upon securing employment elsewhere in the Federal Government, and prior to the effective date of his resignation, shall provide Ms. Morgenweck documentation of same. This notification requirement does not apply to any position the Complainant may obtain in private industry. If Complainant fails to contact Ms. Morgenweck before November 5, 2011, the Agency will process his resignation as of November 6, 2011.

g. The Complainant's most recent Annual Appraisal (covering the period November 1, 2009 to October 23, 2010) will be modified. The comments that were in Part V and Part VI(b) will be removed and replaced with the phrase "No Comments."

h. The Complainant agrees not to pursue employment with Department of the Army, Tobyhanna Army Depot (TYAD).

4. The Complainant agrees to withdraw the subject EEO complaint and the parties' signatures on this Agreement constitute full and complete settlement of this EEO complaint. The Complainant agrees to waive his right to pursue formal or informal action in any forum concerning the matters raised in this complaint. Complainant agrees that the matters raised in this complaint will not be made the subject of future litigation or complaint, formal or informal proceedings including but not limited to meetings, discussions, REDS, or any process, regardless of how informal.

5. Complainant waives the right to any monetary settlement, including but not limited to, attorney fees, costs or expenses, except for that explicitly stated in paragraph 3.

6. Complainant understands that this document constitutes the full Agreement of the parties, and that the Agency is not obligated to take any action that is not specifically contained in this Agreement. Complainant acknowledges that no other promises have been made to him, other than those set out in this Agreement.

7. Complainant also acknowledges that he understands this Agreement and that he is entering into it knowingly, voluntarily and intelligently, without any force, threats or coercion.

8. The parties agree to keep the terms of this Agreement confidential and will not divulge its contents, except as is needed to carry out its terms.

9. The terms of this Agreement will not establish any precedent for Complainant, or for any other Complainant. Complainant agrees that he will not use this Agreement to seek or justify similar terms in any subsequent matter, nor use this Agreement in any other claim or action, other than for enforcement of this Agreement.

10. Complainant agrees that if he takes any action in violation of the terms of this Agreement including, but not limited to, contesting the waiver of his appeal rights, this entire Agreement will become null and void at the discretion of the Agency.

11. If the Complainant believes the Agency has failed to comply with the terms of this Settlement Agreement, the Complainant shall notify the EEOCCR (ATTN: SAMR-EO-CCR), 1901 South Bell Street, Suite 109B, Arlington, VA 22202-4508, in writing, of the alleged

noncompliance within 30 calendar days of when the Complainant knew or reasonably should have known of the alleged noncompliance. The Complainant may request that the terms of the Settlement Agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing, from the point processing ceased under the terms of the Settlement Agreement. If EEOCCR does not respond to the Complainant in writing within 30 calendar days after being notified of the allegations of noncompliance, or if the Complainant is not satisfied with the response, the Complainant may appeal to the Equal Employment Opportunity Commission for a determination as to whether the Agency has complied with the terms of the Agreement. The Complainant may file such an appeal 35 calendar days after service of the allegation of noncompliance upon EEOCCR, but no later than 30 calendar days after receipt of Army's determination. Complainant must serve a copy of the appeal on the agency.

12. The Complainant acknowledges that he has read and understands this Settlement Agreement and voluntarily accepts and agrees to its provisions. The Complainant also acknowledges that he was advised of his right to be represented by an attorney, or other appropriate representative, if he so desired. Prior to signing this Agreement, Complainant acknowledges that he was advised to consult with an attorney.

13. The Parties agree that in the event it is determined that a provision(s) of this Settlement Agreement is contrary to law or regulation or is otherwise unenforceable, only that provision(s) shall be considered null and void and all other provisions shall remain in full force and effect.


Raja Rajendran
Complainant

20 JAN 11
Date


Jeff Morman
Management Official

21 Jan 11
Date


Mark Viola
Management Official

2( Ja 11
Date


Karen Arnold
Agency Representative

1/21/11
Date


3

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
PHILADELPHIA DISTRICT OFFICE
801 MARKET STREET
PENTHOUSE, SUITE 1300
PHILADELPHIA, PA 19107

| | |
|---|---|
| RAJA R. RAJENDRA,<br><br>               COMPLAINANT<br><br>      V.<br><br>JOHN M. MCHUGH, SECRETARY,<br>DEPARTMENT OF THE ARMY<br>            AGENCY | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   EEOC HEARING NO. 530-2014-00136X<br><br>   AGENCY CASE NO. ARTYAD10JUL03318<br><br>   NOVEMBER 24, 2015 |

## AMENDED PREHEARING STATEMENT

**I.**    **INTRODUCTION:**

Mr. Raja Rajendran, (Hereinafter referred to as "Complainant"), was employed with the Tobyhanna Army Depot, as a Mechanical Engineer, GS-0830-09, for a little over one year, and a GS-0830-07 Technician for the remainder of the time. Jeff Morman, Chief, Avionics Engineer Branch was the Complainant's first level supervisor. On August 18, 2010, Complainant filed a formal EEO complaint alleging discrimination based on national origin. On December 23, 2010 an Amended Complaint was filed by Complainant alleging retaliation based on a 3 day suspension issued against Complainant. After some investigation into both complaints, Complainant and Agency entered into a Negotiated Settlement Agreement (NSA) signed by Complainant on January 20, 2011, which effectively ended the investigation into all of Complainant's claims.

After numerous appeals, the United States Equal Employment Opportunity Commission, Office of Federal Operation (Hereinafter referred to as "Commission"), rendered a decision and Ordered the Agency to inform Complainant of his option to either return to the status quo prior to the signing of the settlement agreement, or obtain specific performance of any of the terms of the settlement agreement that had not been carried out. Complainant opted to return to the status quo that existed prior to the settlement agreement signed on January 20, 2011.

There are numerous allegations concerning the Agency's failure to restore Complainant to his pre-NSA status quo, in violation of the Commissions' Order, including, but not limited to the following:

a. Failing to reinstate Complainant to his pre-NSA position as a Technician under the C4ISR Maintenance Engineering Division, C3/Avionics Branch;

b. Failing to reinstate Complainant's union grievance;

c. Failing to put Complainant in an acquisition position;

d. Failing to reinstate Complaint for TDY and related trips;

e. Failing to change Complainant's annual leave to administrative leave for the time spent in attending interviews with other federal agencies;

f. Failing to pay for a 3 day suspension it agreed to do prior to the failed settlement agreement.

g. Failing to return Complainant's personal belongings, including CD's and DVD's;

h. Failing to give Complainant access to email and phone messages;

i. Failing to give Complainant access to all the information he had on his hard drive, including his Villanova University class notes;

j. Failing to restore Complainant's moving expense reimbursement.

k. Failing to reinstate ladder position.

2

When Complainant was returned to work he was placed in a position in the Design Development and Manufacturing Division, SATCOM Systems Engineering Branch, as opposed to his previously held position of Mechanical Engineer under the C4ISR Maintenance Engineering Division, C3/Avionics Branch. Placing Complainant in a different position was a form of retaliation against Complainant for requesting enforcement of his rights under the settlement agreement and those provided in EEO Regulation 29 C.F.R. §1614.504(a) and (c). This not only handicapped Complainant by putting him in a career disadvantage with his peers, it compromised any chances for advancement and career development. Complainant's efforts to obtain outside employment were met with failure through rejection. When Complainant was ultimately placed in his "new position" in the Development and Manufacturing Division, it was in Late August, 2013. As a result, the Agency's failure to restore Complainant to his status quo position, was the equivalent of a constructive discharge, thereby forcing Complainant to resign.

Complainant now seeks redress before this Honorable Court requesting compensation for damages, more specifically set forth below. In addition, Complainant seeks reinstatement to a position he would have been entitled to had he not been discriminated against when he was downgraded to a GS-7, to that of a GS-14, including all seniority, benefits, and conditions.

## II.     FACTS COMPLAINANT WILL ASSERT:

| 1 | Defending accusation of being a "poor performer" | 3/15/2009 | I was hired under developmental position which requires TYAD to provide training or provided opportunity and time to develop skills. The position requires that I strive to complete 40 hours of training annually. I had to struggle to meet this requirement due to all the training denial and cancellations. While Jeff himself is a new employee and still in the learning process (as of 9 Feb 2010), he is accusing me of being a poor performance when I am in the learning process. |

3

| | | | |
|---|---|---|---|
| 2 | Complaints (revised from before) | 6/12/2009 | Jobs that I completed were transferred to other co-worker not giving any credit to my effort while complete credit was given to the co-worker who took over from me, due to discrimination based on national origin, age, religion and race. |
| 3 | Defending accusation of being a "poor performer" | 6/12/2009 | Jeff Morman accused me of not completing any task. The Rain test procedure assignment (Page # 240 of RTS 3 of file rajendran_artyad10jul03318_ROI_part1.pdf) was transferred to Al after I completed the work and on the status report it was indicated that he completed the work (Page # 240 RTS3 & 267) |
| 4 | Defending accusation of being a "poor performer" | 6/26/2009 | Jeff Morman sought feedback based on alleged oral complaints against me, however he did not take on action on other employees even though he received multiple much more serious written complaints (4 page complaints) (page 260) about multiple other employees |
| 5 | Complaints (revised from before) | 6/30/2009 | When Brad Jones complained about Dave Dudzinski that several jobs were still not complete for several months as of 6/30/2009 and referenced April 2009. I started in TYAD in March 2009 and after a lengthy new employee orientation and computer access training I actually started working in April/may 2009. The complaint was on Dave Dudzinski and no action was taken on him. Instead Dave was given an instantaneous cash award in 2009. However, based on verbal complaints from shop floor, Jeff Morman took instantaneous action to demote me instead of promoting me to my target grade FPL-11. It is a discrimination based on national origin, age, religion and race. |
| 6 | Defending accusation of being a "poor performer" | 7/21/2009 | Supervisor of Structural Repair David B stated (page #318) "I have not had whole lot of dealings with Raja" and "usually". This does not add up. He also stated, "We sometimes wait for hours for him to show up." It is not reasonable to expect that I have to drop what I am doing to attend to him immediately. What would have been better is for him to schedule an appointment with me at a mutually agreed upon time. "In my opinion he is not very knowledgeable". He admits he had formed an opinion about me without dealing with me much. Again this is his OPINION without any basis. "I know Ruth also had him for support" " was not happy with his support either". " When Ruth asked him for support, he basically asked her what she needed. Instead of providing answers he provided her with questions". This is second hand information. Also, it is the right thing to ask questions before providing answers. It is NOT a negative comment. |
| 7 | Complaints (revised from before) | 8/6/2009 | Comp time for a TDY trip to Phoenix AZ, on August 2-6, 2009 was not reimbursed per expense report submitted, It is a discrimination based on national origin, age, religion and race. |

| 8 | Complaints (revised from before) | 8/24/2009 | Several jobs were assigned to me when other co-workers did not want to perform what was assigned to them, (jobs not completed for over six months). I was accused of not completing with in time frame that Jeff believes in his mind. It is a discrimination based on national origin, age, religion and race. |
| 9 | Complaints (revised from before) | 8/25/2009 | I was to work alone without any assistance, when the jobs were reassigned to others they were offered assistance, (I was also orally reprimanded when I assigned a insignificant portion of a small task to a SCEP student). It is a discrimination based on national origin, age, religion and race. |
| 10 | Defending accusation of being a "poor performer" | 11/20/2009 | Superviser At cals Glenn G stated (page #319) "The project he was working on was passed on from Don Cook and didn't seem that complicated" "I learned later that it mod didn't work". I was not communicated that there was an issue or what it was about. It appears from his statement that he also did not know what the issue was. "My second experience with Raja involves a tent (canvas) project for building 310" ".... he informed me that he had talked to some vendors. That was several weeks ago. I haven't heard anything except I learned that Jay Ceriani was working on getting the canvas. Personally, Raja just did not seem to have a clue on what was being asked of him." The requirement was for an outside tent roughly 40' X 40', about 30 ' high, for working inside in the winter, with a top that opens to drop heavy components using crane and capable of withstanding several feet of snow. Any flaw in the design can potentially result in death. The initial design comes from the supplier, requiring a serious calculation, design and simulation etc. Glenn did not understand that this was a massive undertaking and was expecting quick results. His accusation was baseless since I was able to get quote for the tent meeting all the criteria from Custom Canvas Manufacturing Company on Dec 10th 2009, in less than 3 weeks from then. I did not know who Jay is or why he was buying canvas. After I provided the quotation, it the management's decision to go forward or not. It is beyond my control at that point. I should not be blamed. |
| 11 | Complaints (revised from before) | 12/1/2009 | Undue restrictions were placed forbidding my presence in various places within the Depot due to discrimination based on national origin, age, religion and race. |

| 12 | Training Denial | 12/2/2009 | Jeff Morman denied my application to attend PE training "PE in Mechanical concentration in heat and mass transfer" (weekends Jan 16th - Apr 3rd 2010) in Wilkes University, PA. Tyad has approved this training for George Galaydick from PED and 15 others in the depot. I requested the list of TYAD employees who took this training was requested through EEOC but TYAD responded that they do not have this information. However this information was requested and obtained through FOIA (Freedom of information act) |
| 13 | Complaints (revised from before) | 12/2/2009 | My request to take a class at Wilkes University titled "PE in Mechanical concentration in heat and mass transfer" (Jan 16 2010 - April 3 2010) was denied. Tyad has approved this training for George Galaydick from PED and 15 others in the depot. I requested the list of TYAD employees who took this training was requested through EEOC but TYAD responded that they do not have this information. However this information was requested and obtained through FOIA (Freedom of information act). It is a discrimination based on national origin, age, religion and race. |
| 14 | Defending accusation of being a "poor performer" | 12/29/2009 | Manufacturing Support Division Chief Deborah S stated (page #309) "Raja does not seem to understand the process to(too?) well and isn't grasping it." I had no interaction with Deborah except for getting authorization for making parts in the machine shop. "You must continue to follow up with him to ensure what you asked is being worked. No sense of urgency. We needed a leveling leg for the UAV and machine shop needed a drawing. Approx a week or so later we followed up with Raja and he pulled it out from under his pile and we walked him down the machine shop." This is a lie and was completely made up at Jeff's request in my opinion. I never generated drawing for leveling leg. ALL my drawings are stored in an organized manner, in my computer as electronic copies. I print them out as I need them. I never had a pile or never needed to pull them from a Pile. The language used here "we walked him down" is very unprofessional. |
| 15 | Defending accusation of being a "poor performer" | 1/4/2010 | Jeff Morman did not analyze whether the feedback on Raja from other employees against Raja were truthful or if they made sense. He only noted whether they were positive or negative. Example below. None of these complaints were brought to my attention so never got an opportunity to defend myself. (Page # 297 - 321) Someone without an open mind will not look at both sides perspectives and form a bad opinion about me. There is also positive feedback from some employees, however, I am taking this opportunity that I was never given before, to defend myself . These negative comments were brought to my attention only on 7 Oct 2010 during Fact Finding Conference. |

| 16 | Defending accusation of being a "poor performer" | 1/4/2010 | Machine Shop Supervisor Zigmund P stated (page #307) "He does not know what he is trying to display or information to pass on". I do not understand what is being conveyed here. My only interaction with him was that, I just provided drawings and he made the part. I do not know, how can anyone possibly make such a statement. "Prints that he supplies dimensions do not add up on prints or they are in poor quality" - I only provided computer generated drawings. It is impossible to generate Pro-E drawings where dimensions do not add up. The software does not allow that. The quality depends on the printer. I believe I printed them from a good printer. If the quality of the print is bad, he could ask me for a better print. He never requested for a better print ever. He said "Many of times he returned with items after completion and asked if "just take a little bit more of this angle" or "a hole goes somewhere" . " This is known as "engineering revision", but he made it sound to make me look incompetent. I do not recall making any revision, however it extremely common to revise in engineering field. "Many of his projects for extra work after initial parts were made to print and did not work". This never happened, however it is common. |
| 17 | Defending accusation of being a "poor performer" | 1/4/2010 | Sheet Metal Mechanic Supervisor William M stated (page #310) "You need to ask him 2-3 times for assistance. All he has to do was to send ONE email, instead of 2-3 times. However this never happened. You get the information needed when someone leads him to the answer. This was made up at Jeff's request in my opinion. I hardly had any interaction with him. He added "nice guy", this contradicts comment made by Jeff that I will confront them if he revealed their names. |
| 18 | Defending accusation of being a "poor performer" | 1/4/2010 | AC Shop Leader Mike D stated (page #312)"Raja went on vacation after looking at the problem. He may have gone too long. The customer called the factory for help." "drawings for canvas cover for an ECU, and I don't know  what was done with it". I do not recall these incidents happening, but even if they did, he also has a duty to follow up or remind me. "He came down to the shop and said he was sent down to look at something. He didn't know what it was that he was to look at, and neither did I. I sent him off to find out what he was to look at. I still haven't heard from him regarding what he was to look at. I was informed that shop needed some help from me but did not have any further details. My attempt to find out what the problem was failed. It was Mike who did not have any clue about the problem. |
| 19 | Defending accusation of being a "poor performer" | 1/5/2010 | Industrial Service Division Chief Mike Fisher stated (page # 314) "This gentleman is simply inept and lacks motivation to ask questions or get help. " "He is afraid to do anything without first asking his mentor Dan O'Fier." There was no basis for these statements. Also, these two statements are contradicting since I was seeking help (which is positive since I am seeking help) - not due to lack of |

7

| | | | mechanical engineering knowledge (Dan's background is electrical) and has very good knowledge of Depot Operations. I have successfully patented a complex design of "CVT-continuous variable transmission" along with my son Prashanth Rajendran who was terminated from TYAD stating that "Depot efficiency will improve by not hiring him." To show I am not inept I am including information regarding my patent work. |
|---|---|---|---|
| 20 | Defending accusation of being a "poor performer" | 1/6/2010 | Power Generator Supervisor Stephen D "He was asking us to do some off the wall things like putting in extra fittings to get pressure readings on different areas of ECU, which did not make any sense to me or AC mechanics. The bottom line with this issue is it took so long to get any workable guidance the building 72 people had brought in contractors to repair this unit." The problem was frequent compressor failure. I wanted to determine the state of the fluid as it enters the compressor. For this, I needed the pressure and temperature to do the calculation. I explained the theory and brought Jeff Morman up to speed on basic thermodynamics in August 2009. Per Jeff's email on Sept 14th 2009 Jeff was in agreement with my approach! Since Stephen D refused to perform this, I could not proceed. This was brought to Jeff Morman's attention on Sept 14th at 10:16AM. Jeff responded with "OK Thanks" at12:28PM. He chose not to do anything about the problem. RTS 19 (Page 241 of part1 file)assigned to Brian was closed with a note "Provided suggestion. Shop did not concur. Closed". This case is very similar to my assignment involving pressure readings.  In this case the assignment was considered closed. However in my case it was not closed and Jeff Morman turned it into a complaint. "We needed a new R-BOM" "Raja had the action for days and was getting nowhere. I basically put the R-BOM together and gave it to Raja so these parts could be ordered." (Page # 316) Jeff emailed me on 9Feb 2010 that PED do not generate R-BOMs and he is not sure who is responsible for the RBOM. Things needed for production should be ordered by Production Management. Jeff emailed Frank, Edigio (on a different project) stating "My group (Raja) does not create BOM/Routes. I would assume this part will go to the mfg cell/shop and as such PED has a hard time in getting the parts made due to charging the work to an indirect work order". Stephen D, also added that I am "very easy to get along with and an all around likable guy", this contradicts comment made by Jeff that I will confront them if he revealed their names. |
| 21 | Defending accusation of being a "poor performer" | 2/11/2010 | Jeff received a letter of appreciation from Nancy Jinselli commending my prompt and diligent work. I was in a ladder position and I should have been automatically promoted to GS 11 position without competition. Jeff chose to ignore this positive comment and use some exaggerated, unrelated and minor negative comments to not promote me to GS 11 position. Jeff always thought that I was a GS |

8

| | | | 11 and I had to frequently remind him that I was a GS 09. |
|---|---|---|---|
| 22 | Complaints (revised from before) | 2/22/2010 | Jeff Morman denied my first application to attend PMT250 on-line training starting between Feb 22nd - Sep 39th 2010 and had 6 months to complete from start date. I had stated in my application that "I must have this training to improve performance". I could work at my leisure and there was no urgency. Jeff Morman first said that he did not remember getting an application from me. Once the proof was provided that I had applied, he claimed that he said that there is no value in attending the training. However TYAD had approved similar training for other employees., that will help in improved performance and help in career development, was denied while Jeff has approved similar career developmental courses to other employees. Jeff lied in his rebuttal that he never saw my application. It is a discrimination based on national origin, age, religion and race. |
| 23 | Complaints (revised from before) | 2/24/2010 | Registration for Pro-E Data Management class Feb 26 - Feb 27 2010, per recommendation by George Wolfe, was denied by Jeff Morman It is a discrimination based on national origin, age, religion and race. |
| 24 | Training Denial | 2/24/2010 | Jeff Morman denied my application to attend PRO-E Data Management training Feb 26 - Feb 27 2010. This training had been strongly recommended by George Wolfe who held a high position in data management for both Jeff Morman and myself. |
| 25 | Complaints (revised from before) | 2/25/2010 | Jeff Morman denied my second application to attend PMT250 on-line training starting between Feb 25 4th - Sep 30th 2010 and had one year to complete from start date. I had stated in my application that "I must have this training to improve performance and agreed work during non duty times. Please approve this course". Jeff Morman said that I am working on a project and so I should apply in "April/May" timeframe. However TYAD had approved similar training for other employees, Jeff lied in his rebuttal that he never saw my application. It is a discrimination based on national origin, age, religion and race. |
| 26 | Complaints (revised from before) | 3/2/2010 | Jeff Morman denied my third application to attend PMT250 on-line training starting between Mar 11th - Sep 30, 2010 and had one year to complete from start date. I had stated that I will work on the training during off-duty hours and weekends. However TYAD had approved similar training for other employees, Jeff lied in his rebuttal that he never saw my application. It is a discrimination based on national origin, age, religion and race. |

| 27 | Complaints (revised from before) | 3/15/2010 | By end of my first work anniversary at TYAD, since I am on a ladder position, if I had met my performance requirements for GS-830-9 I should have automatically been promoted to GS-830-11. Per Jeff's as of 12th Jan 2010, performance assessment, I have met all the major performance objectives. He also stated on 4th Feb 2010, that my performance leveled off, meaning i have met the requirements as of 4th Feb 2010. On 15 March 2010, unless my performance deteriorated between 4th Feb and 15 March, for which there is no evidence. However I was not automatically promoted to GS 11, It is a discrimination based on national origin, age, religion and race. |
|----|----|----|----|
| 28 | Training Denial | 3/31/2010 | Jeff Morman denied my application to attend PRO-E training Apr 1st - Apr 9th 2010 in Ann Arbor, MI. This training was declined because of distance and Jeff Morman's unwillingness to pay for hotel accommodation and travel. Per information provided by TYAD, Nguyen Vincent went to Bolingbrook Illinois (750 miles) for a training, Bryan Causer went to El Suganda CA, Joseph Martino, Corey Sheakoski, George Wolfe and Michael Dec went to Orlando FL and Corey Sheakoski went to Needham. MA |
| 29 | Response to Jeff's rebuttal dated 20 Sept 2010 | 4/1/2010 | Response to Jeff Morman's rebuttal dated 21 Sep 2010 (Page #332) Bullet #3 1 April 2010: It states that I did not give 15 days advanced notice required by Training department. When Training responded they did not mention anything about it being late, all they mentioned was that the signature page was missing and at that point they knew the start date and they did not state it was too late. I did not see any document from Training that they were denying it because it was too late. |

Examples of training approved with less than 15 days advance notice:
1. Curt Lauffer had training approved on 6/16/2010 for a course starting 6/21/2010 (page #446)
2. Martin Salitis had training approved on July 30th for a class starting Aug 11th 2009 (page #486)
3. Ronald Hazlett had training approved on Aug 11th for a class starting Aug 24th 2009 (page #490)
4. Donna Phillips had training approved on Aug 13th for a class starting on Aug 25th 2009 (page #492)
5. Ronald Hazlett had training approved on Aug 10th for a class starting on Aug 24th 2009 (page #494)
6. Donna Phillips had training approved on Aug 13th for a class starting on Aug 25th 2009 (page #497)

Also, a training request that I submitted on Sep 16th 2010 for a training that starts on October 4th 2010 (18 days in advance), Jeff responded on Sep 21st 2010 (only 13 days in advance, the same day he was defending himself with his rebuttal) that he'll approve this training after I give him a hard copy. He waited until 13 days from the training date only to ask for a hard copy and he was going to

| | | | |
|---|---|---|---|
| | | | approve EVEN later. There has never a need for a hard copy in the past. Eventually, I do not know when, it is was approved much later. Training department processed the request successfully and timing was not an issue. I went for the training, only to find out that the training was cancelled.    This was one of the reasons for my suspension. To date, I am still not clear what I did wrong. It is clearly an      act      of      retaliation. A training request was made on June 24th for training starting on July 6th. As of July 1st, Training requested signature page to process, and they did not raise any issue that it was too late or it was only 5 days before the training date. |
| 30 | Defending accusation of being a "poor performer" | 4/2/2010 | The information on the draft PIP (Page # 284 ) is too generic and repetitive. It does not include any specific details in spite of MER asking for specifics. In the final PIP (page #286) the only specific information with dates is Jeff Morman's meetings with Raja. He was UNABLE to provide any specifics on deficiencies, even when requested! which suggests that Jeff wanted to put me on PIP even though there was no specific reason to do so. |
| 31 | Complaints (revised from before) | 4/10/2010 | Training titled "Introduction to PRO-E Wildfire 4.0" scheduled for April 12th 2010 was cancelled by Jeff Morman. It is a discrimination based on national origin, age, religion and race. |
| 32 | Complaints (revised from before) | 6/4/2010 | Jeff Morman recommended that I be put on PIP at GS-802-7 technician position (creating the worst impression about me in a new group) even BEFORE I was working as a technician. PIP is given only when someone doesn't perform at least 6 months AFTER actually starts working at that level. This is obviously planned, as said in the letter. Also Jeff can only provide the facts on how I performed and not tell the other supervisor what action to take. It is a discrimination based on national origin, age, religion and race. |
| 33 | Complaints (revised from before) | 6/18/2010 | I was demoted from GS-9 to GS-7 level. It is a discrimination based on national origin, age, religion and race. |
| 34 | Complaints (revised from before) | 6/18/2010 | I was demoted from GS-830 Mechanical Engineer to GS- 802 Technician position. It is a discrimination based on national origin, age, religion and race. |
| 35 | Complaints (revised from before) | 6/18/2010 | I was removed from ladder position. It is a discrimination based on national origin, age, religion and race. |
| 36 | Complaints (revised from before) | 6/18/2010 | I was removed from acquisition role (I have met all the qualification per DOD 5000.52-M to hold this position). It is a discrimination based on national origin, age, religion and race. |

| 37 | Complaints (revised from before) | 6/24/2010 | Training titled "Introduction to PRO-E Wildfire 4.0" scheduled for July 6th 2010 was denied by Jeff Morman, because he would not pay for travel and stay. It is a discrimination based on national origin, age, religion and race. |
| 38 | Training Denial | 6/24/2010 | Jeff Morman denied my application to attend PRO-E training July 6 - 9 2010 in Ann Arbor, MI. This training was declined because of distance and Jeff Morman's unwillingness to pay for hotel accommodation and travel, even though it was a 4 day class as opposed to 5 day class with considerable reduction in cost for hotel accommodation and per diem |
| 39 | Complaints (revised from before) | 7/8/2010 | Training titled "Introduction to PRO-E Wildfire 4.0" scheduled for July 12th 2010 was cancelled by Jeff Morman. It is a discrimination based on national origin, age, religion and race. |
| 40 | Training Denial | 7/8/2010 | Jeff Morman cancelled my PRO-E training July 12 - 16 2010. Jeff Morman stated (page 332 of file rajendran_artyad10jul03318_ROI_part1) that he found out from travel who found out from the car rental company that I could not secure a rental car.  On July 8th at 7:17 am Travel asked for my credit card number. I immediately replied that I did not have it with me "NOW" because I left my credit card in my apartment.  At 7:39 am Amy Hauffman from Travel replied (page 550) stating she processed the reservation  for picking up rental car on 8th and dropping off on 17 of July. I was going to pick up the rental car after work, around 4:30 pm. At 3:36 pm I was told to cancel my registration for the Pro-E course (page 547 of file rajendran_artyad10jul03318_ROI_part1). Jeff stated (page 332 of file rajendran_artyad10jul03318_ROI_part1) "I asked Mr. Rajendran how he planned to get a car as well as to secure/pay for a hotel without a credit card, he stated "I don't know". This is a lie. I had already secured a hotel reservation with my credit card (page 553) and I had to cancel it. He also stated on his rebuttal on 21 Sept 2010 that he never received my request for training and eventually said I am working on a project. It is also another lie. |
| 41 | Response to Jeff's rebuttal dated 20 Sept 2010 | 7/8/2010 | Jeff Morman stated (page 332) that he found out from travel who found out from the car rental company that I could not secure a rental car. on July 8th at 7:17 am Travel asked for my credit card number. I immediately replied that I did not have it with me "NOW" because I left my credit card in my apartment.    At 7:39 am Amy Hauffman from Travel replied (page 550) stating she processed the reservation t for picking up rental car on 8th and dropping off on 17 of July. I was going to pick up the rental car after work, around 4:30 pm. At 3:36 |

| | | | pm I was told to cancel my registration for the Pro-E course (page 547). Jeff stated (page 332) "I asked Mr. Rajendran how he planned to get a car as well as to secure/pay for a hotel without a credit card, he stated "I don't know". This is a lie. I had already secured a hotel reservation with my credit card (page 553) and I had to cancel it. |
|----|----|----|----|
| 42 | Complaints (revised from before) | 8/20/2010 | Jeff Morman made it very difficult for me to rent a car for TDY trip in retaliation - 10 hrs from home requiring me to spend considerable time away from home. He stated his decision TWICE, knowing I will be in Michigan the previous day. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin, age, religion and race. |
| 43 | Complaints (revised from before) | 8/23/2010 | Forgetting to sign in on Aug 23rd 2010 was made an AWOL one (1) week after the incident on Sep 13th 2010. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin, age, religion and race. A coworker George Galaydick forgot to sign in one day and was reminded by the Secretary at noon, but he was not suspended or given an AWOL.  Union mentioned that the depot agreed to give signing in as OPTION to the employee, instead I was TOLD to sign in. |
| 44 | Complaints (revised from before) | 8/25/2010 | Jeff Morman fabricated a complaint that "Joe (Bilotta) informed me that he did the work himself as he got tired of waiting on engineering". Joe Bilotta said that he did not raise this as a complaint and only told that he did the work himself. Jeff Morman fabricated this. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin |
| 45 | Defending accusation of being a "poor performer" | 8/25/2010 | Jeff accused me of a complaint from Joseph Bilotta that he was "Joe informed me that he did the work himself as he got tired of waiting on Engineering". I asked Joe if it was true and he replied "All I said to Jeff on the phone was I did the task myself". Jeff used this lie is as one of the reasons for demoting me. |

13

| 46 | Training Denial | 9/2/2010 | Jeff Morman denied my application to attend PRO-E training Sep 13 - 18 2010 in Ann Arbor, MI. I had requested this training following bad feedback (very minor and insignificant defects) from Jeff Morman on a PRO-E assignment. I showed that the cost comparison for all the training locations (Michigan being the 2nd lowest and Wayne being the highest) |
| --- | --- | --- | --- |
| 47 | Complaints (revised from before) | 9/13/2010 | I was replaced by a new newly graduated younger white, American, Caucasian engineer who was hired fulltime just 2 months ago who does not meet all qualification required to hold an acquisition position(DOD 5000.52-M) It requires successfully completing several exam and it would take over 2 years to complete. It is a discrimination based on national origin, age, religion and race. |
| 48 | Training Denial | 9/20/2010 | Did not approve leave of absence to take the training on my own. |
| 49 | | 9/27/2010 | Jeff Morman always referenced in several written and verbal communications that I was a GS 11 even though I was a GS 9 at that time. I had to frequently correct him. Obviously his expectations and comments / feedbacks were based on the performance requirements for a GS 11. |

14

| 50 | Complaints (revised from before) | 10/4/2010 | Comp time for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not reimbursed per expense report submitted, It is a discrimination based on national origin, age, religion and race. |
| 50 | Complaints (revised from before) | 10/4/2010 | Hotel stay for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was under-paid per expense report submitted. It is a discrimination based on national origin, age, religion and race.(Management claims I did not make this trip) |
| 50 | Complaints (revised from before) | 10/4/2010 | Travel mileage for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not paid per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin |
| 50 | Complaints (revised from before) | 10/4/2010 | Toll charges for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not paid per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (Management claims I did not make this trip) |

| 50 | Complaints (revised from before) | 10/4/2010 | Per diem for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not paid per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (Management claims I did not make this trip) |
| 51 | Complaints (revised from before) | 10/7/2010 | Dave Dudzinsky bragged about Mr. Chupko using the "F...." word when speaking with me, during FFC. Mr. Chupko admitted that. Jeff Morman did not take any action on this, suggesting I deserve that. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin. Another employee used such language and was suspended for one day. However in this case, he was praised. |
| 52 | Defending accusation of being a "poor performer" | 10/7/2010 | Jeff Morman accused me of not checking in drawings every day in his email dated 10/7/2010 (Page # 269). No one has this responsibility in PED and Jeff stated this in his testimony that no one PED works on Pro/E. Per my Position Description (PD), creating drawings is not in one of my responsibilities. Job assignments required significant amount of drawing work. Also, almost all of the complaints were related to drawing creations. |
| 53 | Defending accusation of being a "poor performer" | 10/7/2010 | Page # 835 Jeff mentioned (Part 2) "I don't have a need for PRO-E in my branch" however, most of the complaints about me are regarding drawing creation. These two are in contradiction. He also stated (Page # 800) that "He is the only one in my group who knows PRO-E". The other in the group do not know PRO-E and did not create any drawings. However all the complaints were against me and not against any of the others in the group. |

| 54 | Defending accusation of being a "poor performer" | 10/7/2010 | I started with TYAD on March 15th 2009. Jeff Morman started with TYAD around April 20th 2009. Until then Dave Dudzinsky was my Supervisor for approximately my first one month. My first month was pretty much spent on New Employee Orientation and taking several mandatory training courses before I could access and start using government computers. I do not recall being given any assignment. Dave Dudzinsky stated "I said you (Jeff Morman) have to supervise him". There is no basis for Dave Dudzinsky's comment. Obviously he has something to gain from playing along with Jeff Morman. |
| 55 | FFC investigation procedure | 10/7/2010 | During the first   FFC investigation, the questions the investigator Noella Lahaie asked me was like a prosecutor interrogating a suspect. When she asked questions to TYAD, they were very light and leading. I was not given any opportunity to explain anything from my side whereas she obtained all the information only from TYAD side. It was clearly biased. |
| 56 | Complaints (revised from before) | 12/4/2010 | Comp time for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 was not reimbursed per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin |
| 56 | Complaints (revised from before) | 12/4/2010 | Per diem for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 was under-paid. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin |

17

| 56 | Complaints (revised from before) | 12/4/2010 | Reduced reimbursement for travel mileage for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (by altering my travel expense form) |
|----|----------|-----------|-----------------|
| 56 | Complaints (revised from before) | 12/4/2010 | Reduced reimbursement for hotel stay for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010. It is a to discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (by altering my travel expense form) |
| 56 | Complaints (revised from before) | 12/4/2010 | Reduced reimbursement for toll charges for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (by altering my travel expense form) |
| 57 | Complaints (revised from before) | 12/9/2010 | Administrative leave for the travel time to attend a federal job interview at Picatinny, NJ on 9th Dec 2010 was not changed from annual leave to administrative leave, due to discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin. |
| 58 | Complaints (revised from before) | 1/11/2011 | My suspension was purposely made Tuesday - Thursday requiring me to travel 10 hrs each way just to work on Monday and Friday. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin. |
| 59 | Complaints (revised from before) | 1/11/2011 | Jeff Morman gave me 3 day suspension on 11 Jan 2011, for (a) Unattended training, (which I totally deny all the charges / any wrong doing with evidence) and (b)forgetting to sign-in in the roll call in the morning on 23rd Aug 2010, which is not the same as AWOL, claiming it to be an AWOL (1.5 hrs). I pleaded guilty for forgetting to sign and requested to be pardoned since it was my first offense and assured that I will never repeat it. My request was denied. AR 690-700: chapter 751, Table 1-1: Table of Penalties for vaious Offenses does not list forgetting to sign-in as an offense. However I was suspended. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin, age, religion and race. |

18

| 60 | | | |
|---|---|---|---|
| | | | Drawings of completed jobs and jobs in progress which were produced by Raja Rajendran |
| 61 | | | |
| | | | Supporting documents and emails which show the jobs completed and in progress that Raja Rajendran produced |
| 62 | | | |
| | | | Supporting medical documents |
| 63 | | | |
| | | | Financial losses |

## III.    DOCUMENTS/EVIDENCE COMPLAINANT WILL RELY ON:

See attached documents labeled 1-63.

## IV.    RELIEF SOUGHT:

Complainant is seeking relief (in addition to lost wages due to not promoting him to his target position (FTP) GS-830-11 from March 15th 2010):

1) lost opportunity for job offer as GS-830 -14 position, after Complainant's attempt to gain a federal position with (TARDEC) in February 2011 failed AND

2) Compensation for lost income from February 2011, at GS 830 14 rate, due to failed attempt in securing the federal position as a GS 830 14 at TARDEC.

3) Actual economic damages for the above will be provided.

4) (Regardless of the outcome of this trial) Complainant is requesting that the EEOC order dated 2 Feb 2013, must be complied with, including

a. Written apology from TYAD for using swear words when speaking to me and bragging about it during FFC on the record.

19

b. Re-instatement of my grievance through the Union submitted on 6 Jan. 2011.

c. Re-instatement of Complainants status-quo position 108270-2086359 GS-802-07 technician in PED C4ISR Maintenance Engineering Division.

d. Lost wages because of the delay in executing the original EEOC order dated 31st Jan. 2013.

e. Lost wages due to Non-Compliance of the original NSA (January 21st 2011, since signing of NSA till the original order is re-instated).

f. Reimbursement of all un-compensated/under-compensated travel related expenses.

g. Provide unpaid comp time for TDY and for attending federal job interview

h. Reimburse cost incurred by me including but not limited to attorney fees, travel costs and hotel accommodation for reinstating EEO the complaint.

i. Per the EEOC order, the administrative leave was converted to leave without pay (LWOP). With that, Complainant is eligible for all the benefits as an employee. TYAD included this amount to be paid back by Complainant in order to reinstate the EEO complaint. This amount must be paid back to me.

j. TYAD offered Complainant an incorrect (non-status quo) position which he had to resign. TYAD must pay my benefits as an employee from the day Complainant signed the NSA until they offer the original status quo position.

k. Reverse the change of Service Computation Date??? (March 2005)

l. TYAD has to pay Complainant the cost of his relocation from Michigan (home) to Pennsylvania (TYAD) twice, since they offered Complainant an incorrect (non-status quo) position.

m. Reinstate union grievance.

n. TYAD should not have removed Complainant from ladder position. TYAD should place Complainant in ladder position

o. TYAD should not have removed Complainant from acquisition role. TYAD should place Complainant in acquisition role.

20

5) Loss of income from employment;

    a. On March 15th 2010, I should have been promoted to GS-830-11 without competition per my FTP.

    b. Demotion and negative comments in the OPF, AWOL and suspension on the record at TYAD led to failed job interviews (GS-830-14 position) and ruined any possibility of employment, both Federal and private industry jobs. I did not get selected for the GS-830-14 position at TARDEC even though I was a successful GS-830-13 (equivalent NH3) employee because of the reasons below:

        i. Late notification from TYAD about the interview.

        ii. Failed notification from TYAD about the interview since I had provided my TYAD contact information (email id and phone number) for all the applied positions

        iii. I did not have the competitive advantage due to lack of training/certification.

        iv. Discrimination and my reputation being ruined in the OPF with AWOL, suspension and negative comments

        v. TYAD abruptly removed access to federal emails, so I could not receive any invitation to attend interviews.

        vi. TYAD abruptly removed access to voice mail, so I could not receive any notification about job interviews

        vii. Above all, demotion from GS-830-09 to GS-802-07 (engineer to technician). All W2s showing my only income earned after the discrimination, are attached.

    c. Other lost job opportunities (unknown) resulting from the below:

        i. Abrupt removal of access to US Army email messages, both online and archived,

        ii. Access to US Army Voice Mail messages immediately following NSA signed Jan 20, 2011.

iii. TYAD also wiped my hard drive clean immediately following NSA. On March 11 2011, TYAD communicated via email that they will provide me email access if I agree to waive my rights to pursue formal or informal action in any forum concerning the email matters resolved by this agreement and I agree that these email matters will not be made the subject of future litigation or complaint, formal or informal proceedings including but not limited to meetings, discussions, REDS, grievances, or any process regardless of how informal. I did not sign the waiver because I was not in agreement with the conditions. On 28 Oct 2011, I drove to TYAD, PA to access my email and retrieve all the information from the hard drive. TYAD Security let me in, however kicked me out immediately before I could even access my computer, as soon as Management learned that I was in the premises.

6) Complainant seeks to be compensated at GS-830-11 from March 15th 2010 till March 2011 and at GS-830-14 from then onward.

7) I seek to be offered a GS-830-14 acquisition position at TYAD

8) TYAD to offer all denied training

9) Annual Leave going forward for any federal position should be calculated based on original SCD date

10) Compensation for significant decrease in retirement income I am seeking the difference in retirement benefits due to loss of employment and difference in SCD date including but not limited to

a. Pension benefits

b. 401K, TSP(Thrift Savings Plan) and any such benefits

11) Compensation for family vacation that was based on recommendation from counselor / physician to improve mental status and family relationship, medication, exercise, and diet, and traveling to attending several job interviews, in spite of facing financial hardship,

12) Complainants daughter Priya Rajendran was forced to take up a job against her will and graduated a year later (May 2014) from University of Michigan, Ann Arbor, with Bachelor's degree in Chemical Engineering. Complainant stopped paying college tuition for her right after his demotion and this caused a lot of friction in the family and she left home. Complainant is seeking compensation for mental pain and suffering due to this event.

22

13) All Attorney fees from 2011 to present including re-instating of my complaints after NSA was breached by TYAD.

14). Travel Expenses related EEO case including multiple trips to meet with attorneys.

15) Costs related to relocation from Michigan to Pennsylvania two times (2009 and 2013) and whenever I join TYAD again.

16) Dismissal of all the personnel who are found guilty of discrimination if they don't have the minimum qualification required for the position they are in.


Unreimbursed travel expenses as follows:

1) April 20th 2010 trip to Wilkes University to attend a symposium.
2) Comp time for a TDY trip to Phoenix AZ, on August 2-6, 2009
3) Comp time for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010
4) Travel mileage for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010
5) Hotel stay for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Complainant did not make this trip)
6) Toll charges for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Complainant did not make this trip)
7) Per diem for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Complainant did not make this trip)
8) Comp time for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010
9) Reduced compensation for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 (by altering my travel expense form)
10) Reduced hotel stay for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 (by altering my travel expense form)
11) Reduced per diem for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 (by altering my travel expense form)
12) Administrative leave for the travel time to attend a federal job interview at Picatinny, NJ on 9th Dec 2010.


## V.    LIST OF WITNESSES TO TESTIFY AT HEARING:

a.   Raja Rajendran – Complainant.

b.   Prashanth Rajendran, son of Complainant and former employee on what he heard from supervisors and his experience and difficulties he went thru

23

c. Prof. Nataraj – Villanova University, will testify about the nature and difficulty/technical intensity of the assignments given to Complainant.

d. PRO-E Expert in PA – to be named

e. Kevin Clouthier/Mary Teachout/ Charles Mills Family Counselors who will testify about damages.

f. Dr. Ram Surendran, Family doctor who will testify about damages.

g. Joseph Stehurski – TYAD employee - will testify about Complainants performance.

h. Curt Lauffer– TYAD employee - will testify about Complainants performance.

i. Brad Jones - TYAD employee - will testify about Complainants performance and complaints and disappointments about my coworkers/other employee conduct/unequal treatment.

j. Bryan Causer – TYAD employee - Pro E expert, will testify about project he took over from Complainant

k. Eugene Curran - TYAD employee – will testify about Complainant's performance

l. Joseph Bilotta - TYAD employee – will testify regarding refuting statements made by Jeff Morman.

m. Mike Fisher - TYAD employee – will testify about Complainant's performance.

n. Michelle Strausser - TYAD employee – will testify about certain projects that were given to others with no repercussions for not completing project.

o. Don Cook - TYAD employee – will testify about work requirements.

p. Jeff Morman, TYAD employee, supervisor of Complainant.

q. Joseph Stuharski - TYAD employee co worker on performance

r. Dan O'Fier TYAD employee co worker/mentor on performance

s. Any witnesses listed in Agency's Prehearing Statement.

24

t.    Complainant reserves the right to supplement this list with permission from the Court.

Respectfully submitted,

**JAMES, SCHWARTZ & ASSOCIATES, P. C.**

By:    _____/s/ Jonathan J. James, JJJ6405_____
JONATHAN J. JAMES, ESQUIRE
1500 Walnut Street
21st Floor
Philadelphia, Pa 19102
(215) 751-9865
jjames@civilrightspa.com

**ATTORNEYS FOR COMPLAINANT**

Date: December 9, 2015

25



**DEPARTMENT OF THE ARMY**
**TOBYHANNA ARMY DEPOT**
**11 HAP ARNOLD BOULEVARD**
**TOBYHANNA PA 18466-5038**

Office of Equal Opportunity                                              9 January 2014

Memorandum for Equal Employment Opportunity Commission, Philadelphia District Office
            801 Market Street, Suite 1300, Philadelphia, PA 19107-3127

SUBJECT: Request for EEOC Hearing in the EEO Complaint of Mr. Raja Rajendran and
Mr. John McHugh, Secretary of the Army, DA Docket Number ARTYAD10JUL03318

1. After receiving the Report of Investigation (ROI), Mr. Rajendran requested a hearing in front
of the Equal Employment Opportunity Commission. In accordance with that request, a copy of
the file is enclosed.

2. Request you send the original and two copies of the findings and conclusions, the hearing
transcript and the case file to the Department of the Army, Director, EEO Compliance and
Complaints Review, ATTN: SAMR-EO-CCR, Bldg 214, 5825 21st Street, Room 129 Fort
Belvoir, VA 22060-5921. In addition, please send one copy of your findings, conclusions and
hearing transcript to my office, Tobyhanna Army Depot, ATTN:ELTY-EO, 11 Hap Arnold
Blvd., Tobyhanna, PA 18466-5038.

3. Point of Contact for this office is Ms. Shannon Reyes, who can be contacted by phone (570)
615-7880, fax (570) 615-6299 and email (shannon.a.reyes2.civ@mail.mil). The Agency
representative is Mr. James Stellabotte, who can be reached by phone (570) 615-6583, fax (570)
615-6665 and email (james.r.stellabotte.civ@mail.mil).

John Sutkowsky
Equal Employment Manager

Enclosure
Case File

cc:
Mark Scheffer, Complainant's Representative (w/o encl)
Raja Rajendran, Complainant (w/o encl)
James Stellabotte, Agency Representative (w/o encl)
EOCCR (w/encl)

Printed on Recycled Paper

DA Docket Number:  ARTYAD10JUL03318

**Mr. Raja Rajendran**
**5179 Shadycreek Drive**
**Troy, MI 48085**
**rajendranfamily@hotmail.com**

**v.**

**Mr. Ryan D. McCarthy**
**Secretary of the Army**

**Processing EEO Office:**
**Tobyhanna Army Depot**
**Shannon Reyes**
**ATTN:  ELTY-EO**
**11 Hap Arnold Blvd.**
**Tobyhanna, PA 18466-5038**
**EEO Email address:  shannon.a.reyes2.civ@mail.mil**
**Phone Number:  (570) 615-7880**
**Fax Number:  (570) 615-6299**

**Servicing Labor Counselor:**
**David Tomaszewski**
**ATTN: ELTY-LO**
**11 Hap Arnold Blvd.**
**Tobyhanna, PA 18466-5054**
**Email address:  david.p.tomaszewski.civ@mail.mil**
**Phone Number:  (570) 615-7210**
**Fax Number:  (570) 615-6665**

**Servicing MACOM:**
**Army Materiel Command (AMC) Office of Diversity & Leadership**
**Paula Y. Taylor**
**4400 Martin Road, Suite A5SE046**
**Redstone Arsenal, AL 35898**
**Email address: paula.y.taylor2.civ@mail.mil**
**Phone Number: (256) 450-6964**

# Noncompliance

*Law Offices of Mark S. Scheffer*
P.O. Box 111
Birchrunville, PA 19421
TELEPHONE (610) 915-8351
marksscheffer@gmail.com

November 29, 2013

**Via Facsimile((202) 663-7022 and Regular Mail**
The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

      Re:    Raja R. Rajendran v. John M. McHugh, Secretary, Dept. of the Army
            Agency No. ARTYAD10JUL03318

Dear Sir or Madam:

Please accept this letter as Complainant's brief or statement in support of his Petition for Enforcement of the EEOC's orders dated January 31, 2013 and June 25, 2012.

In the Order of June 25, 2012, the EEOC ordered the Agency to notify Complainant of his option to either return to the status quo prior to the signing of a settlement agreement or obtain specific performance of a term of the agreement that had not been fulfilled. Both parties filed requests for reconsideration of that Order, and the EEOC issued its decision on those requests on January 31, 2013. The EEOC denied both requests for consideration, and stood by its June 25, 2012 Order directing the Agency to notify Complainant's of his options as indicated. As in the original Order, the Agency was also directed to issue its "compliance report" regarding implementation of the EEOC's decision within 30 days.

Complainant opted to return to the status quo that existed prior to the settlement. The main reason for this appeal is that the Agency has failed to return Complainant to the status quo.

At the time of the failed settlement agreement Complainant held the position of Mechanical Engineer under the C4ISR Maintenance Engineering Division, C3/Avionics Branch (position title and number 108270-2086359). This is the "status quo" position that Plaintiff held at the time the settlement agreement was entered into. However, the position the Agency put Complainant in when he was returned to work was a position in the Design Development and Manufacturing Division, SATCOM Systems Engineering Branch (position title and number 00593-2604995). By failing to restore Complainant to his former position and instead putting Complainant in a different and new position, the

1

Agency violated the EEOC's order by not restoring the "status quo" that existed when the failed settlement agreement was entered into.

The placement of Complainant in a different position created various burdens on Complainant and placed him at a career disadvantage with his peers that compromised any chances of advancement and career development. It had taken Complainant approximately 2 years to learn various procedures regarding depot operation that were necessary for the performance of the job he held prior to the settlement agreement ("the status quo" position), and to hone and master the skills required for that position. The Agency placed Complainant in a new position that required him to learn a new job and new set of skills to which he only had limited exposure in the past. Thus, the peers he was assigned to work with have had years of training and years of opportunity to garner the experience and skills that Complainant had to learn from scratch. Furthermore, Complainant was told by his supervisors that they would expect him to perform at a GS-13 level because he had held a GS-13 position in the past, despite the fact that he was now in a GS-7 position (the circumstances regarding Complainant's placement at that position level are part of what is at issue on the underlying discrimination complaint) and the fact that they were denying his requests for training in the new position.

The Agency has also failed to restore the "status quo" is other ways: a) by failing to reinstate Complainant's union grievance; b) failing to put him in an acquisition position; c) failing to reinstate compensation time to Complainant for TDY and other mission related trips; c) failing to change annual leave to administrative leave for the time spent in attending interviews with other federal agencies and failing to provide an explanation; d) failing to pay for a 3 day suspension as it had agreed to do long before the failed settlement agreement; e) failing to return Complainant's personnel belongings, including CDs and DVDs, which were taken from Complainant; f) failing to give Complainant access to his previous email and phone messages received on his work extension; g) failing to give Complainant access to the information he had on his hard drive, especially his Villanova University class notes; and, h) failing to restore Complainant's moving expense reimbursement.

The Agency did not get around to putting Complainant into his new and different position (as noted, not the "status quo" position) until late August of 2013. Because of, *inter alia*, the Agency's failure to restore Complainant to his "status quo" position and the other hardships its failure to restore the status quo caused to Complainant, Complainant was constructively discharged from his employment and forced to "resign" from the Agency.

In addition to the Agency's failure to restore the "status quo," the Agency also violated the EEOC's orders by not issuing a "compliance report" (or at least not copying Complainant on such report) as directed by the EEOC.

It is therefore requested that the EEOC order the Agency do what it had already ordered it to do and in fact restore the "status quo" by putting Complainant back in the position he held at the time of the negotiation of the failed settlement agreement, as well

as restoring the benefits, conditions and materials (including work product and personal items) which were part of the "status quo" at the time the failed settlement agreement was entered into.

Sincerely,

Mark S. Scheffer

Cc:    John Sutkowsky, EEO Manager

3

*Law Offices of Mark S. Scheffer*
P.O. Box 111
Birchrunville, PA 19421
TELEPHONE (610) 915-8351
marksscheffer@gmail.com

November 01, 2013

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

Re:    Raja R. Rajendran v. John M. McHugh, Secretary, Dept. of the Army
       Agency No. ARTYAD10JUL03318

Dear Sir or Madam:

I enclose Complainant Raja R. Rajendran's Notice of Petition for Enforcement in the above-referenced matter. If you need any more information, please do not hesitate to contact me.

Sincerely,

Mark S. Scheffer

Cc:    John Sutkowsky, EEO Manager

*The U.S. Equal Employment Opportunity Commission*

## NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | RAJENDRAN, RAJA, R |
| Home/mailing address: | 5179 Shadycreek Drive |
| City, State, ZIP Code: | Troy, MI 48085 |
| Daytime Telephone # (with area code): | (248) 524-2747 |
| E-mail address (if any): | rajendranfamily@hotmail.com |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | Mark S. Scheffer |
| Non-Attorney Representative name: | |
| Address: | P.O. Box 111 |
| City, State, ZIP Code: | Birchrunville, PA 19421 |
| Telephone number (if applicable): | (610) 915-8351 |
| E-mail address (if any): | markscheffer@gmail.com |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | Department of the Army |
| Identify the Agency's complaint number: | ARTYAD10Jul03318 |
| Location of the duty station or local facility in which the complaint arose: | Tobyhanna Army Depot, Tobyhanna, PA |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ___ Yes; Date Received _____(Remember to attach a copy)<br>X No<br>___ This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | X No<br>___ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | X No<br>___ Yes **(Attach a copy of the civil action filed)** |

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | *Mark S. Scheffer* |
| Date: | 11/01/2013 |

DC Form 573 REV 1/01

## PRIVACY ACT STATEMENT



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Raja R. Rajendran,
Complainant,

v.

John M. McHugh,
Secretary,
Department of the Army,
Agency.

Request No. 0520120593

Appeal No. 0120121377

Agency No. ARTYAD10JUL03318

### DENIAL

The Agency requested reconsideration of the decision in <u>Raja R. Rajendran v. Department of the Army</u>, EEOC Appeal No. 0120121377 (June 25, 2012). In his response to the Agency's request, Complainant also requested reconsideration of the decision. EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. <u>See</u> 29 C.F.R. § 1614.405(b).

By regulation, requests must be filed within thirty (30) calendar days after the party receives the previous decision. 29 C.F.R. § 1614.405(b). A document is timely filed if it is received or postmarked before the expiration of the applicable filing period or, in the absence of a legible postmark, if it is received by mail within five days of the expiration of the applicable filing period. 29 C.F.R. § 1614.604(b).

We note that the Commission's previous decision included a Certificate of Mailing indicating that, for purposes of timeliness, the Commission would presume that the decision was received within five (5) calendar days of the date on which it was mailed. The Certificate stated that the decision was mailed to Complainant, Complainant's attorney, and the Agency's Director of EEO Compliance and Complaints Review on June 25, 2012. Thus, the parties are presumed to have received the previous decision no later than June 30, 2012. Thirty days from that date is July 30, 2012.

As evidenced by the postmark date, the Agency mailed its Request for Reconsideration on August 8, 2012. The Agency asserted that it received the prior decision on July 13, 2012, but it offered no evidence, such as a date stamp indicating receipt, to show that the Agency's designated EEO official did not receive the prior decision within five days of the date on which it was mailed.

Complainant, through his attorney, submitted his Opposition to the Agency's Request for Reconsideration and Request for Reconsideration of Expungement of Disciplinary Actions Finding on September 9, 2012. Complainant asserted that his attorney received the Agency's Request on August 20, 2012, but offered no evidence regarding his receipt of the Commission's prior decision. Complainant was entitled to request reconsideration within the same 30-day window as the Agency, following receipt of the Commission's prior decision, not from the time the Agency requested reconsideration.

The parties have not submitted their requests for reconsideration within the 30-day time limit set by regulations and have not provided adequate justification for waiving the time limit. Accordingly, the requests are DENIED. The decision in EEOC Appeal No. 0120121377 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## ORDER

The Agency is ordered to notify Complainant of his option to either return to the status quo prior to the signing of the settlement agreement or to obtain specific performance of provision 3.b. of the agreement concerning lost wages. The Agency shall so notify Complainant within thirty (30) calendar days of the date this decision becomes final. The Agency shall also notify Complainant that he has fifteen (15) calendar days from the date of his receipt of the Agency's notice within which to notify the Agency either that he wishes to return to the status quo prior to the signing of the agreement or that he wishes to allow the terms of the agreement to stand. Complainant shall be notified that in order to return to the status quo ante, he must return any benefit received pursuant to the agreement. The Agency shall determine its obligations due to Complainant, or return of consideration or benefits due from Complainant, within thirty (30) calendar days of the date this decision becomes final, and shall include such information in the notice to Complainant.

If Complainant elects to reinstate the underlying EEO complaint, the Agency shall resume processing the EEO complaint from the point processing ceased pursuant to 29 C.F.R. § 1614.108 et seq. If, however, Complainant elects specific performance, the Agency shall notify Complainant that the terms of the settlement agreement shall stand and, within thirty (30) days of the date Complainant notifies the Agency that he is electing specific performance, the Agency shall pay Complainant the lost wages he incurred from serving the 3-day suspension during the January 11-13, 2011, time period, as referenced in provision 2.b.

3                                            0520120593

The Agency is further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision." The report shall include supporting documentation verifying that the corrective action has been implemented.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0610)

Compliance with the Commission's corrective action is mandatory. The Agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. The Agency's report must contain supporting documentation, and the Agency must send a copy of all submissions to the Complainant. If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The Complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File a Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the Complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0610)

This is a decision requiring the Agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the Agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. Filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et

4

0520120593

seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney with the Court does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

JAN 31 2013
Date



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Raja R. Rajendran,
Complainant,

v.

John M. McHugh,
Secretary,
Department of the Army,
Agency.

Appeal No. 0120121377

Agency No. ARTYAD10JUL03318

### DECISION

Complainant filed a timely appeal with this Commission from a final decision by the Agency dated December 22, 2011, finding that it was in compliance with the terms of a January 21, 2011 settlement agreement. See 29 C.F.R. § 1614.402; 29 C.F.R. § 1614.504(b); and 29 C.F.R. § 1614.405.

### BACKGROUND

The January 21, 2011 settlement agreement provided, in pertinent part, that:

> 3.b. Any and all disciplinary actions originating from the Complainant's employment at Tobyhanna Army Depot [Activity] will be expunged from the Complainant's Official Personnel File (OPF) within 15-calendar days of the effective date of this signed settlement agreement. The Complainant will receive lost wages he incurred from the three day suspension dated on December 13, 2010, and served on January 11, 2011-January 13, 2011. Within 30-calendar days of the effective date of this signed settlement agreement, the Agency will forward the request for payment to Defense Finance and Accounting Service (DFAS). Parties understand that DFAS, the agency responsible for dispersing funds, is a separate governmental agency and is therefore outside the authority of the Department of the Army.[1]

---

[1] The settlement agreement also provides for the Agency to promote Complainant to a Mechanical Engineer, GS-9, Step 10 position; modify Complainant's most recent annual appraisal by replacing certain comments with "No Comments;" and place Complainant on Administrative Leave effective January 24, 2011 until July 30, 2011, and on Leave Without Pay from July 31, 2011 to November 5, 2011. Complainant agreed to sign a Letter of

0120121377

By letter to the Agency dated November 18, 2011, Complainant alleged breach of provision 3.b. Specifically, Complainant alleged that the Agency did not expunge any and all disciplinary actions from his OPF, and did not pay him for the lost wages incurred from the 3-day suspension during the January 11-13, 2011 time period. Complainant requested that his underlying complaint be reinstated from the point processing ceased.

In its December 22, 2011 final decision, the Agency found no breach of provision 3.b. The Agency found that Complainant's portion of the breach allegation regarding the lost wage payment was untimely. The Agency noted the instant agreement specifically provided that Complainant was to notify the Agency of a claim of breach within thirty days of the date he became aware of the alleged breach. The Agency found that Complainant should have known by February 2011, that the Agency had failed to pay him for the 3-day suspension. The Agency further stated that during the relevant period, it did not discover until researching the matter that Complainant's time and attendance records had been coded in such a way that he lost pay. The Agency determined that notwithstanding the untimeliness of the breach allegation, it had initiated processing of the payroll correction.

The Agency noted that while the instant agreement did not contain a specific date by which Complainant should be paid lost wages, it required the Agency to process the request for payment within 30 days of the date the instant agreement was signed. The Agency stated that assuming a 2-month delay from the time processing was complete, until a pay adjustment was made, Complainant should have realized no later than April 21, 2011, that the Agency had failed to comply with the terms of provision 3.b. The Agency further noted that Complainant waited for more than 6 months until October 31, 2011, before making inquiry into the matter and did not allege breach until November 18, 2011.

The Agency further found that assuming, for the sake of argument only, Complainant's breach allegation was timely, it was in compliance concerning the removal of disciplinary actions from Complainant's OPF. The Agency asserted that Human Resources withdrew the SF-50 form related to the January 11-13, 2011 suspension which was Complainant's only discipline from his OPF.

## CONTENTIONS ON APPEAL

On appeal, Complainant argues that he was not aware of the alleged breach of provision 3.b. until October 31, 2011, when two Agency employees "informed him by telephone that the Agency had not forwarded the request for payment. This discovery was made just after [Complainant's] unsuccessful and frustrating trip to Tobyhanna Army Depot to investigate the status of the expungement of his disciplinary actions and processing of his lost wages." Complainant argues that following the signing of the agreement, the Agency severed almost all contacts with him "other than payment of his salary." Complainant further argues that once he

Resignation which would be effective November 6, 2011. These provisions are not at issue in the instant case.

0120121377

became aware of the non-compliance, he timely notified the Agency by letter on November 18, 2011, well within the 30-day limitation period.

In response, the Agency argues that it was in compliance with provision 3.b. Regarding Complainant's allegation that the disciplinary action was not expunged from his OPF, the Agency again stated that it was in compliance. The Agency stated that a Human Resources Specialist stated that Complainant's OPF was clear of any disciplinary action.

Regarding Complainant's allegation that he was not paid lost wages, the Agency stated that Agency management in good faith believed that once the SF-50 relating to Complainant's suspension was removed from his OPF, Complainant would receive the lost wage payment for the 3-day suspension. The Agency stated, however, its time and attendance system incorrectly coded Complainant and he did not receive pay for lost wages until December 2011. The Agency stated that once Complainant notified the Agency of the non-compliance, it immediately processed the payment less than two weeks later on December 1, 2011.

## ANALYSIS AND FINDINGS

EEOC Regulation 29 C.F.R. § 1614.504(a) provides that any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties. The Commission has held that a settlement agreement constitutes a contract between the employee and the Agency, to which ordinary rules of contract construction apply. See Herrington v. Dep't of Def., EEOC Request No. 05960032 (December 9, 1996). The Commission has further held that it is the intent of the parties as expressed in the contract, not some unexpressed intention, that controls the contract's construction. Eggleston v. Dep't of Veterans Affairs, EEOC Request No. 05900795 (August 23, 1990). In ascertaining the intent of the parties with regard to the terms of a settlement agreement, the Commission has generally relied on the plain meaning rule. See Hyon O v. U.S. Postal Serv., EEOC Request No. 05910787 (December 2, 1991). This rule states that if the writing appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature. See Montgomery Elevator Co. v. Building Eng'g Servs. Co., 730 F.2d 377 (5th Cir. 1984).

In the instant case, we first find that Complainant's breach claim concerning the lost wage payment was timely raised. EEOC Regulation 29 C.F.R. § 1614.504(a) provides that if a complainant believes that the agency has failed to comply with the terms of a settlement agreement, complainant shall notify the EEO Director within 30 days of when complainant knew or should have known of the noncompliance. Provision 3.b. states that the Agency would forward the request for payment to DFAS within 30-days of the effective date of the signing of the instant agreement. Here, the record indicates that Complainant stated that it was not until October 31, 2011, he became aware of the Agency's failure to request DFAS to process his lost wages when two named Agency employees informed him by telephone that the Agency had not forwarded the request for payment. Complainant stated that the employees reached out to him by telephone following his frustrating and long trip to the Tobyhanna Army

Depot to find out the status of the expungement of his disciplinary action and processing of his lost wages. Given the circumstances of this case, we find that the breach claim was timely raised.

Turning to the merits of the breach claim regarding lost wages, the Commission determines that this there is no evidence of record that the Agency has met its affirmative obligation on this matter. We note that the record contains a copy of the e-mail correspondence dated December 1, 2011, between Complainant's former supervisor and the payroll department authorizing 9 hours of regular time pay for Complainant each day for the dates of January 11-13, 2011. However, there is no evidence in the record indicating that Complainant has actually been paid for the three days of lost wages. Therefore, we find that the Agency has not established that it has fully complied with that portion of provision 3.b. concerning the lost wages.

On the other hand, find that the Agency properly found no breach concerning the expungement of Complainant's disciplinary action. Specifically, we note that the record reflects that Human Resources withdrew the SF-50 form relating to January 11-13, 2011 suspension which was Complainant's only discipline from his OPF.

Where this Commission finds that a settlement agreement has been breached, pursuant to 29 C.F.R. § 1614.504(c), the only two remedies available are specific performance of the terms of the agreement or reinstatement of the underlying EEO complaint at the point processing ceased. On appeal, Complainant requested that his original complaint be reinstated for further processing, which would require that Complainant return any benefits received pursuant to the settlement agreement. See, e.g., Armour v. Department of Defense, EEOC Appeal No. 01965593 (June 24, 1997).

We therefore give Complainant the option, in accordance with the Order below, of either reinstating his underlying complaint and returning any benefits received pursuant to the settlement agreement, or specifically enforcing the terms of the agreement.

Accordingly, based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we REVERSE the Agency's finding that it was in compliance with portion of provision 3.b. of the settlement agreement concerning lost wages and REMAND the matter to the Agency for further processing in accordance with the Order below. We AFFIRM the Agency's decision finding no breach of that portion of provision 3.b. regarding the expungement of disciplinary action.

## ORDER

The Agency is ordered to notify Complainant of his option to either return to the status quo prior to the signing of the settlement agreement or to obtain specific performance of provision 3.b. of the agreement concerning lost wages. The Agency shall so notify Complainant within thirty (30) calendar days of the date this decision becomes final. The Agency shall also notify

Complainant that he has fifteen (15) calendar days from the date of his receipt of the Agency's notice within which to notify the Agency either that he wishes to return to the status quo prior to the signing of the agreement or that he wishes to allow the terms of the agreement to stand. Complainant shall be notified that in order to return to the status quo ante, he must return any benefit received pursuant to the agreement. The Agency shall determine its obligations due to Complainant, or return of consideration or benefits due from Complainant, within thirty (30) calendar days of the date this decision becomes final, and shall include such information in the notice to Complainant.

If Complainant elects to reinstate the underlying EEO complaint, the Agency shall resume processing the EEO complaint from the point processing ceased pursuant to 29 C.F.R. § 1614.108 et seq. If, however, the Complainant elects specific performance, the Agency shall notify Complainant that the terms of the settlement agreement shall stand and, within thirty (30) days of the date Complainant notifies the Agency that he is electing specific performance, the Agency shall pay Complainant the lost wages he incurred from serving the 3-day suspension during the January 11-13, 2011 time period, as referenced in provision 2.b.

The Agency is further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision." The report shall include supporting documentation verifying that the corrective action has been implemented.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0610)

Compliance with the Commission's corrective action is mandatory. The Agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. The Agency's report must contain supporting documentation, and the Agency must send a copy of all submissions to the Complainant. If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The Complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the Complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

6                                                      0120121377

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0610)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (T0610)

This decision affirms the Agency's final decision/action in part, but it also requires the Agency to continue its administrative processing of a portion of your complaint. You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision on both that portion of your complaint which the Commission has affirmed and that portion of the complaint which has been remanded for continued administrative processing. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the Agency, or your appeal with the Commission, until such time as the Agency issues its final decision on your complaint. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in

7                                              0120121377

court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.  If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security.  See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  The grant or denial of the request is within the sole discretion of the Court.  Filing a request for an attorney with the Court does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


JUN 2 5 2012
Date



**DEPARTMENT OF THE ARMY**
**TOBYHANNA ARMY DEPOT**
**11 HAP ARNOLD BOULEVARD**
**TOBYHANNA PA 18466-5038**

June 4, 2013

Memorandum for: Department of the Army, EEO Compliance and Complaints Review,
ATTN: SAMR-EO-CCR, Patricia Ash, EEO Specialist,
5825 21ˢᵗ Street, Building 214, Room 129, Fort Belvoir, VA 22060

SUBJECT: Compliance Report in the EEO Complaint of Raja Rajendran v. John M. McHugh,
Secretary of the Army, OFO # 0520120593/0120121377, DA Docket Number:
ARTYAD10JUL03318

1. By letter dated February 6, 2013, you ordered that the subject case be processed in accordance
with an Office of Federal Operations decision dated January 31, 2013.

2. An update on our actions since our last compliance letter (dated May 9, 2013) is as follows:
By an email dated May 13, 2013 (Enclosure #1), Mr. Rajendran notified the TYAD Legal Office
that he has shingles. By an email dated May 15, 2013 (Enclosure #1), Attorney Paul Jorgensen
withdrew his representation in the EEO Complaint of Raja Rajendran OFO #
0520120593/0120121377, DA Docket Number: ARTYAD10JUL03318. By letter dated May 17,
2013 (Enclosure #2), the TYAD Legal Office requested a face-to-face meeting with Mr.
Rajendran on May 31, 2013 to discuss a timeline for Mr. Rajendran's return to work as well as
any issues or concerns he may have. By an email dated May 28, 2013 (Enclosure #1), Mr.
Rajendran stated a face-to-face meeting is possible but, due to his illness, would need to be
limited in duration of time. By email dated May 28, 2013 (Enclosure #1), the TYAD Legal
Office offered to reschedule the meeting due to Mr. Rajendran's condition.

3. On June 3, 2013, the TYAD Legal Office spoke with Mr. Rajendran on the phone and they
agreed that his return date would be June 10, 2013. Although he will not physically return that
date due to his illness (and he will be using sick and annual leave), June 10 will be the date he
returns to our rolls.

4. Tamara Kappel is the point of contact for this action. She can be reached by phone at 570-
615-6172 or by e-mail at tamara.l.kappel.civ@mail.mil.

John Sutkowsky
EEO Manager

Encls
as

CF (w/o encl):
Mr. Raja Rajendran, Complainant
TYAD Legal Office



Printed on Recycled Paper

2

## Enclosures

1. Email string (dated May 13, 2013-May 29, 2013) submitted by Mr. David Siegle (TYAD Legal Office).

2. Letter (dated May 17, 2013) mailed to Mr. Rajendran (received on May 20, 2013) by Mr. David Siegle (TYAD Legal Office).

Enclosure #1   page 1 of 3

| | |
|---|---|
| **From:** | Siegle, David K CIV USARMY USAMC (US) |
| **To:** | Kapoor, Tamara L CIV (US) |
| **Subject:** | FW: Meeting at TYAD (UNCLASSIFIED) |
| **Date:** | Wednesday, May 29, 2013 9:53:28 AM |
| **Attachments:** | Request for COnference LTR 17 May 13.pdf |
| **Importance:** | High |

Classification: UNCLASSIFIED
Caveats: NONE

Tamara,

Please see e-mails below and the attached letter I sent to Raj.

Please let me know if you need anything else.

Thanks,
Dave

-----Original Message-----
From: Siegle, David K CIV USARMY USAMC (US)
Sent: Tuesday, May 28, 2013 3:01 PM
To: 'Raja Rajendran'
Cc: Stellabotte, James R CPT USARMY 244 AVN BDE (US)
Subject: RE: Meeting at TYAD (UNCLASSIFIED)
Importance: High

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Rajendran,

If another time would be better for you, please let me know. It is our desire to get you back to work, and we are looking to meet with you to facilitate that goal.

Please advise as to when you think it you would be able to meet, as we certainly don't want to cause you any more discomfort than you are already in.

Thank you and regards,
Dave Siegle

-----Original Message-----
From: Raja Rajendran [mailto:rajendranfamily@hotmail.com]
'Sent: Tuesday, May 28, 2013 1:47 PM
To: Siegle, David K CIV USARMY USAMC (US)
Cc: Stellabotte, James R CPT USARMY 244 AVN BDE (US)
Subject: RE: Meeting at TYAD (UNCLASSIFIED)

Dear Mr. Siegle,

I received your mail dated May 17th 2013. You have expressed that you would like a face to face meeting on 31st May 2013. If the face to face meeting is inevitable, I can meet you on the 31st. I am on medication which numbs locally and gives me a temporary relief for few hours. As of now, I do not have any issues or concerns since the returning process has just began. I will let you know as and when it arises.

Enclosure #1 page 2 of 3

Please send me a draft of any document that requires my signature so that the time I spend during the meeting in minimized. I am only requesting this since the shingles virus has affected my hip/belt line area that makes it inconvenient to wear appropriate attire for a prolonged period. Hope you will understand.

Sincerely

Raja Rajendran

> From: david.k.siegle.civ@mail.mil
> To: pauljorgensen@mac.com; rajendranfamily@hotmail.com
> CC: james.r.stellabotte.mil@mail.mil
> Subject: RE: Meeting at TYAD (UNCLASSIFIED)
> Date: Thu, 16 May 2013 13:40:59 +0000
>
> Classification: UNCLASSIFIED
> Caveats: NONE
>
> Mr. Jorgensen,
>
> Thank you for notifying us of your withdraw regarding your representation of Mr. Rajendran. Pursuant
to your notice, we will communicate directly with Mr. Rajendran until such time as we are advised either
by Mr. Rajendran or counsel that Mr. Rajendran is again represented by someone other than himself.
>
> Thank you again and regards,
> Dave Siegle
>
>
> DAVID K. SIEGLE
> Associate Counsel
> Tobyhanna Army Depot
> ATTN: ELTY-LO
> 11 Hap Arnold Blvd.
> Tobyhanna, PA 18466-5054
> 570-615-6545
> 570-615-6665 (fax)
> david.k.siegle.civ@mail.mil
>
>
>
>
> -----Original Message-----
> From: paul jorgensen [mailto:pauljorgensen@mac.com]
> Sent: Wednesday, May 15, 2013 8:24 AM
> To: Raja Rajendran
> Cc: Siegle, David K CIV USARMY USAMC (US)
> Subject: Re: Meeting at TYAD
>
> Dear Mr. Rajendran and Mr. Seigle:
>
> Based on Mr. Rajendran's response directly to Tobyhanna Army Depot legal counsel, it is clear that
Mr. Rajendran no longer is employing me in these matters and has understandably elected to represent

Enclosure #1   page 3 of 3

himself. Therefore, as the case appears to have come to a resolution, I am advising Mr. Rajendran by this communication that unless he re-employs me, I am bowing out of his future proceedings with the Army, and that all communications should be directly between TOAA, as his employer, and Mr. Rajendran.
>
> Please feel free to contact me if either of you have any questions about my position in this matter.
>
> Paul Jorgensen
> (301) 606-5664
>
>
> On May 13, 2013, at 6:56 PM, Raja Rajendran <rajendranfamily@hotmail.com> wrote:
>
>
> Dear Mr. Siegle,
> I received a copy of your letter addressed to attorney Mr. Jorgensen regarding a face to face meeting to discuss my return to TYAD. I had requested Mr. Jorgensen to request you to convey in an email, all the information that will be discussed in the meeting. I have acquired shingles virus and is severely painful. It will be difficult for me to travel for an extended period of time. Unless it is extremely important I would like to use telecommunications, such as conference call, instead of face to face meeting. Please let us know if this is feasible.
> Thanks.
>
> Sincerely,
> Raja Rajendran
>
>
>
> Classification: UNCLASSIFIED
> Caveats: NONE
>
>


Classification: UNCLASSIFIED
Caveats: NONE


Classification: UNCLASSIFIED
Caveats: NONE

Enclosure #2    page 1 of 2



**DEPARTMENT OF THE ARMY**
TOBYHANNA ARMY DEPOT
11 HAP ARNOLD BOULEVARD
TOBYHANNA PA 18466-5084

REPLY TO
ATTENTION OF:

May 17, 2013

Legal Office

**VIA FIRST CLASS AND CERTIFIED MAIL**

Mr. Raja Rajendran
5179 Shady Creek Drive
Troy, MI 48085

RE: Return to Tobyhanna Army Depot

Dear Mr. Rajendran:

Pursuant to your attorney, Paul Jorgensen's notice of withdraw of representation, and since Tobyhanna Army Depot (TYAD) is unaware if you are represented by anyone else, I am writing you regarding your decision to return to TYAD in accordance with the Equal Employment Opportunity Commission's (EEOC) decision dated June 25, 2012.

Prior to Mr. Jorgensen's withdraw of representation, it was our mutual goal to meet collectively and discuss a timeline for your return to work as well as address any issues or concerns that you may have. The objective of this meeting was to make your return to work as seamless as possible and to allow you to quickly integrate into your position.

Though I understand that you are ill at this time, I would like to meet with you on Friday, May 31, 2013 to discuss your return to work.

If you have any questions or need further clarification on this matter, I can be contacted at (570) 615-7210 or by e-mail: david.k.siegle.civ@mail.mil.

I look forward to meeting with you and I hope that you will be well soon.

DAVID K. SIEGLE
ASSOCIATE COUNSEL

Printed on Recycled Paper

Enclosure #2

page 2 of 2

NDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

5054-CC
MR RAJA RAJENDRAN

5179 SHADY CREEK DRIVE

TROY, MI 48085

Article Number
(Transfer from service label)     7009341 0000 2399 6928 8

Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____     ☐ Agent
                      ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
                                    5-20-0

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Certified Mail     ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

Dear Mr. Rajendran:

Pursuant to your attorney, Paul Jorgensen's notice of withdraw of representation, and since Tobyhanna Army Depot (TYAD) is unaware if you are represented by anyone else, I am writing you regarding your decision to return to TYAD in accordance with the Equal Employment Opportunity Commission's (EEOC) decision dated June 25, 2012.

Prior to Mr. Jorgensen's withdraw of representation, it was our mutual goal to meet collectively and discuss a timeline for your return to work as well as address any issues or concerns that you may have. The objective of this meeting was to make your return to work as seamless as possible and to allow you to quickly integrate into your position.

Though I understand that you are ill at this time, I would like to meet with you on Friday, May 31, 2013 to discuss your return to work.

If you have any questions or need further clarification on this matter, I can be contacted at (570) 615-7210 or by e-mail: david.k.siegle.civ@mail.mil.

I look forward to meeting with you and I hope that you will be well soon.

DAVID K. SIEGLE
ASSOCIATE COUNSEL

Printed on ♻ Recycled Paper

**Kappel, Tamara L CIV (US)**

| | |
|---|---|
| **From:** | Siegle, David K CIV USARMY USAMC (US) |
| **Sent:** | Wednesday, May 29, 2013 9:53 AM |
| **To:** | Kappel, Tamara L CIV (US) |
| **Subject:** | FW: Meeting at TYAD (UNCLASSIFIED) |
| **Attachments:** | Request for COnference LTR 17 May 13.pdf |
| **Importance:** | High |

Classification: UNCLASSIFIED
Caveats: NONE

Tamara,

Please see e-mails below and the attached letter I sent to Raj.

Please let me know if you need anything else.

Thanks,
Dave

-----Original Message-----
From: Siegle, David K CIV USARMY USAMC (US)
Sent: Tuesday, May 28, 2013 3:01 PM
To: 'Raja Rajendran'
Cc: Stellabotte, James R CPT USARMY 244 AVN BDE (US)
Subject: RE: Meeting at TYAD (UNCLASSIFIED)
Importance: High

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Rajendran,

If another time would be better for you, please let me know.  It is our desire to get you
back to work, and we are looking to meet with you to facilitate that goal.

Please advise as to when you think it you would be able to meet, as we certainly don't want
to cause you any more discomfort than you are already in.

Thank you and regards,
Dave Siegle

-----Original Message-----
From: Raja Rajendran [mailto:rajendranfamily@hotmail.com]
Sent: Tuesday, May 28, 2013 1:47 PM
To: Siegle, David K CIV USARMY USAMC (US)
Cc: Stellabotte, James R CPT USARMY 244 AVN BDE (US)
Subject: RE: Meeting at TYAD (UNCLASSIFIED)

Dear Mr. Siegle,

1

I received your mail dated May 17th 2013. You have expressed that you would like a face to face meeting on 31st May 2013. If the face to face meeting is inevitable, I can meet you on the 31st. I am on medication which numbs locally and gives me a temporary relief for few hours. As of now, I do not have any issues or concerns since the returning process has just began. I will let you know as and when it arises.

Please send me a draft of any document that requires my signature so that the time I spend during the meeting in minimized. I am only requesting this since the shingles virus has affected my hip/belt line area that makes it inconvenient to wear appropriate attire for a prolonged period. Hope you will understand.

Sincerely

Raja Rajendran

> From: david.k.siegle.civ@mail.mil
> To: pauljorgensen@mac.com; rajendranfamily@hotmail.com
> CC: james.r.stellabotte.mil@mail.mil
> Subject: RE: Meeting at TYAD (UNCLASSIFIED)
> Date: Thu, 16 May 2013 13:40:59 +0000
>
> Classification: UNCLASSIFIED
> Caveats: NONE
>
> Mr. Jorgensen,
>
> Thank you for notifying us of your withdraw regarding your representation of Mr. Rajendran. Pursuant to your notice, we will communicate directly with Mr. Rajendran until such time as we are advised either by Mr. Rajendran or counsel that Mr. Rajendran is again represented by someone other than himself.
>
> Thank you again and regards,
> Dave Siegle
>
>
> DAVID K. SIEGLE
> Associate Counsel
> Tobyhanna Army Depot
> ATTN: ELTY-LO
> 11 Hap Arnold Blvd.
> Tobyhanna, PA 18466-5054
> 570-615-6545
> 570-615-6665 (fax)
> david.k.siegle.civ@mail.mil
>
>
> -----Original Message-----
> From: paul jorgensen [mailto:pauljorgensen@mac.com]

2

> Sent: Wednesday, May 15, 2013 8:24 AM
> To: Raja Rajendran
> Cc: Siegle, David K CIV USARMY USAMC (US)
> Subject: Re: Meeting at TYAD
>
> Dear Mr. Rajendran and Mr. Seigle:
>
> Based on Mr. Rajendran's response directly to Tobyhanna Army Depot legal counsel, it is clear that Mr. Rajendran no longer is employing me in these matters and has understandably elected to represent himself. Therefore, as the case appears to have come to a resolution, I am advising Mr. Rajendran by this communication that unless he re-employs me, I am bowing out of his future proceedings with the Army, and that all communications should be directly between TOAA, as his employer, and Mr. Rajendran.
>
> Please feel free to contact me if either of you have any questions about my position in this matter.
>
> Paul Jorgensen
> (301) 606-5664
>
>
> On May 13, 2013, at 6:56 PM, Raja Rajendran <rajendranfamily@hotmail.com> wrote:
>
>
> Dear Mr. Siegle,
> I received a copy of your letter addressed to attorney Mr. Jorgensen regarding a face to face meeting to discuss my return to TYAD. I had requested Mr. Jorgensen to request you to convey in an email, all the information that will be discussed in the meeting. I have acquired shingles virus and is severely painful. It will be difficult for me to travel for an extended period of time. Unless it is extremely important I would like to use telecommunications, such as conference call, instead of face to face meeting. Please let us know if this is feasible.
> Thanks.
>
> Sincerely,
> Raja Rajendran
>
>
>
> Classification: UNCLASSIFIED
> Caveats: NONE
>
>


Classification: UNCLASSIFIED
Caveats: NONE



Classification: UNCLASSIFIED
Caveats: NONE


3

Enclosure #1   page 1 of 3

| | |
|---|---|
| **From:** | Siegle, David K CIV USARMY USAMC (US) |
| **To:** | Kapoel, Tamara L CIV (US) |
| **Subject:** | FW: Meeting at TYAD (UNCLASSIFIED) |
| **Date:** | Wednesday, May 29, 2013 9:53:28 AM |
| **Attachments:** | Request for COnference LTR 17 May 13.pdf |
| **Importance:** | High |

Classification: UNCLASSIFIED
Caveats: NONE

Tamara,

Please see e-mails below and the attached letter I sent to Raj.

Please let me know if you need anything else.

Thanks,
Dave

-----Original Message-----
From: Siegle, David K CIV USARMY USAMC (US)
Sent: Tuesday, May 28, 2013 3:01 PM
To: 'Raja Rajendran'
Cc: Stellabotte, James R CPT USARMY 244 AVN BDE (US)
Subject: RE: Meeting at TYAD (UNCLASSIFIED)
Importance: High

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Rajendran,

If another time would be better for you, please let me know.  It is our desire to get you back to work, and we are looking to meet with you to facilitate that goal.

Please advise as to when you think it you would be able to meet, as we certainly don't want to cause you any more discomfort than you are already in.

Thank you and regards,
Dave Siegle

-----Original Message-----
From: Raja Rajendran [mailto:rajendranfamily@hotmail.com]
'Sent: Tuesday, May 28, 2013 1:47 PM
To: Siegle, David K CIV USARMY USAMC (US)
Cc: Stellabotte, James R CPT USARMY 244 AVN BDE (US)
Subject: RE: Meeting at TYAD (UNCLASSIFIED)

Dear Mr. Siegle,


I received your mail dated May 17th 2013. You have expressed that you would like a face to face meeting on 31st May 2013. If the face to face meeting is inevitable, I can meet you on the 31st. I am on medication which numbs locally and gives me a temporary relief for few hours. As of now, I do not have any issues or concerns since the returning process has just began.  I will let you know as and when it arises.

Enclosure #1 page 2 of 3

Please send me a draft of any document that requires my signature so that the time I spend during the meeting in minimized.  I am only requesting this since the shingles virus has affected my hip/belt line area that makes it inconvenient to wear appropriate attire for a prolonged period. Hope you will understand.

Sincerely

Raja Rajendran

> From: david.k.siegle.civ@mail.mil
> To: pauljorgensen@mac.com; rajendranfamily@hotmail.com
> CC: james.r.stellabotte.mil@mail.mil
> Subject: RE: Meeting at TYAD (UNCLASSIFIED)
> Date: Thu, 16 May 2013 13:40:59 +0000
>
> Classification: UNCLASSIFIED
> Caveats: NONE
>
> Mr. Jorgensen,
>
> Thank you for notifying us of your withdraw regarding your representation of Mr. Rajendran. Pursuant to your notice, we will communicate directly with Mr. Rajendran until such time as we are advised either by Mr. Rajendran or counsel that Mr. Rajendran is again represented by someone other than himself.
>
> Thank you again and regards,
> Dave Siegle
>
>
> DAVID K. SIEGLE
> Associate Counsel
> Tobyhanna Army Depot
> ATTN: ELTY-LO
> 11 Hap Arnold Blvd.
> Tobyhanna, PA 18466-5054
> 570-615-6545
> 570-615-6665 (fax)
> david.k.siegle.civ@mail.mil
>
>
>
>
> -----Original Message-----
> From: paul jorgensen [mailto:pauljorgensen@mac.com]
> Sent: Wednesday, May 15, 2013 8:24 AM
> To: Raja Rajendran
> Cc: Siegle, David K CIV USARMY USAMC (US)
> Subject: Re: Meeting at TYAD
>
> Dear Mr. Rajendran and Mr. Seigle:
>
> Based on Mr. Rajendran's response directly to Tobyhanna Army Depot legal counsel, it is clear that Mr. Rajendran no longer is employing me in these matters and has understandably elected to represent

Enclosure #1   page 3of3

himself. Therefore, as the case appears to have come to a resolution, I am advising Mr. Rajendran by this communication that unless he re-employs me, I am bowing out of his future proceedings with the Army, and that all communications should be directly between TOAA, as his employer, and Mr. Rajendran.
>
> Please feel free to contact me if either of you have any questions about my position in this matter.
>
> Paul Jorgensen
> (301) 606-5664
>
>
> On May 13, 2013, at 6:56 PM, Raja Rajendran <rajendranfamily@hotmail.com> wrote:
>
>
> Dear Mr. Siegle,
> I received a copy of your letter addressed to attorney Mr. Jorgensen regarding a face to face meeting to discuss my return to TYAD. I had requested Mr. Jorgensen to request you to convey in an email, all the information that will be discussed in the meeting. I have acquired shingles virus and is severely painful. It will be difficult for me to travel for an extended period of time. Unless it is extremely important I would like to use telecommunications, such as conference call, instead of face to face meeting. Please let us know if this is feasible.
> Thanks.
>
> Sincerely,
> Raja Rajendran
>
>
>
> Classification: UNCLASSIFIED
> Caveats: NONE
>
>


Classification: UNCLASSIFIED
Caveats: NONE



Classification: UNCLASSIFIED
Caveats: NONE

Enclosure #2    page 1 of 2



## DEPARTMENT OF THE ARMY
TOBYHANNA ARMY DEPOT
11 HAP ARNOLD BOULEVARD
TOBYHANNA PA 18466-5064

REPLY TO
ATTENTION OF:

May 17, 2013

Legal Office

**VIA FIRST CLASS AND CERTIFIED MAIL**

Mr. Raja Rajendran
5179 Shady Creek Drive
Troy, MI  48085

RE:  Return to Tobyhanna Army Depot

Dear Mr. Rajendran:

Pursuant to your attorney, Paul Jorgensen's notice of withdraw of representation, and since Tobyhanna Army Depot (TYAD) is unaware if you are represented by anyone else, I am writing you regarding your decision to return to TYAD in accordance with the Equal Employment Opportunity Commission's (EEOC) decision dated June 25, 2012.

Prior to Mr. Jorgensen's withdraw of representation, it was our mutual goal to meet collectively and discuss a timeline for your return to work as well as address any issues or concerns that you may have.  The objective of this meeting was to make your return to work as seamless as possible and to allow you to quickly integrate into your position.

Though I understand that you are ill at this time, I would like to meet with you on Friday, May 31, 2013 to discuss your return to work.

If you have any questions or need further clarification on this matter, I can be contacted at (570) 615-7210 or by e-mail:  david.k.siegle.civ@mail.mil.

I look forward to meeting with you and I hope that you will be well soon.

DAVID K. SIEGLE
ASSOCIATE COUNSEL

Printed on Recycled Paper

Enclosure #2
page 2 of 2

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired. Print your name and address on the reverse so that we can return the card to you. Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature  X □ Agent □ Addressee  B. Received by (Printed Name)  C. Date of Delivery 5-20-3  D. Is delivery address different from item 1? □ Yes  If YES, enter delivery address below: □ No |

5054–CC
MR RAJA RAJENDRAN

5179 SHADY CREEK DRIVE

TROY, MI 48085

3. Service Type
□ Certified Mail   □ Express Mail
□ Registered   □ Return Receipt for Merchandise
□ Insured Mail   □ C.O.D.
4. Restricted Delivery? (Extra Fee)   □ Yes

Article Number (Transfer from service label): 7009 3410 0002 3996 9288

Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Dear Mr. Rajendran:

Pursuant to your attorney, Paul Jorgensen's notice of withdraw of representation, and since Tobyhanna Army Depot (TYAD) is unaware if you are represented by anyone else, I am writing you regarding your decision to return to TYAD in accordance with the Equal Employment Opportunity Commission's (EEOC) decision dated June 25, 2012.

Prior to Mr Jorgensen's withdraw of representation, it was our mutual goal to meet collectively and discuss a timeline for your return to work as well as address any issues or concerns that you may have. The objective of this meeting was to make your return to work as seamless as possible and to allow you to quickly integrate into your position.

Though I understand that you are ill at this time, I would like to meet with you on Friday, May 31, 2013 to discuss your return to work.

If you have any questions or need further clarification on this matter, I can be contacted at (570) 615-7210 or by e-mail: david.k.siegle.civ @ mail.mil.

I look forward to meeting with you and I hope that you will be well soon

DAVID K. SIEGLE
ASSOCIATE COUNSEL

Printed on ♲ Recycled Paper

**Siegle, David K CIV USARMY USAMC (US)**

| | |
|---|---|
| From: | paul jorgensen [pauljorgensen@mac.com] |
| Sent: | Wednesday, May 15, 2013 8:24 AM |
| To: | Raja Rajendran |
| Cc: | Siegle, David K CIV USARMY USAMC (US) |
| Subject: | Re: Meeting at TYAD |

Dear Mr. Rajendran and Mr. Seigle:

Based on Mr. Rajendran's response directly to Tobyhanna Army Depot legal counsel, it is clear that Mr. Rajendran no longer is employing me in these matters and has understandably elected to represent himself.  Therefore, as the case appears to have come to a resolution, I am advising Mr. Rajendran by this communication that unless he re-employs me, I am bowing out of his future proceedings with the Army, and that all communications should be directly between TOAA, as his employer, and Mr. Rajendran.

Please feel free to contact me if either of you have any questions about my position in this matter.

Paul Jorgensen
(301) 606-5664


On May 13, 2013, at 6:56 PM, Raja Rajendran <rajendranfamily@hotmail.com> wrote:

        Dear Mr. Siegle,
        I received a copy of your letter addressed to attorney Mr. Jorgensen regarding a face to face meeting to discuss my return to TYAD. I had requested Mr. Jorgensen to request you to convey in an email, all the information that will be discussed in the meeting.  I have acquired shingles virus and is severely painful.  It will be difficult for me to travel for an extended period of time. Unless it is extremely important I would like to use telecommunications, such as conference call, instead of face to face meeting. Please let us know if this is feasible.
        Thanks.

        Sincerely,
        Raja Rajendran

1

# Position Description

**PD#:** AI11993                                    **Replaces PD#:**

**Sequence#:** VARIES

## PROGRAM ANALYST

### GS-0343-09

**Servicing CPAC:** TOBYHANNA DEPOT, PA          **Agency:** VARIES

**Army Command:** VARIES

**Command Code:** VARIES

**Region:** NORTHEAST

**Citation 1:** OPM PCS MGMT & PROGRAM ANALYSIS SERIES, GS-343, AUG 90

**Citation 2:** OPM ADMIN ANALYSIS GEG, AUG 90

**Classified By:** CPO AI      **Classified Date:** 05/25/1995

| | | |
|---|---|---|
| **FLSA:** NON-EXEMPT | **FLSA Worksheet:** | **FLSA Appeal:** NO |
| | **Drug Test Required:** VARIES | **DCIPS PD:** NO |
| **Career Program:** VARIES | **Financial Disclosure Required:** NO | **Acquisition Position:** NO |
| **Functional Code:** 00 | **Requires Access to Firearms:** VARIES | **Interdisciplinary:** NO |
| **Competitive Area:** VARIES | **Position Sensitivity:** VARIES | **Security Access:** VARIES |
| **Competitive Level:** VARIES | **Target Grade/FPL:** 09 | **Career Ladder PD:** YES |

**Career Pos 1:** AI221547 GS-0343-05

**Career Pos 2:** AI221543 GS-0343-07

| | | |
|---|---|---|
| **Emergency Essential:** [ ] | **Bus Code:** VARIES | **Personnel Reliability Position:** VARIES |
| **Information Assurance:** N | **Influenza Vaccination:** NO | |
| **Army Enterprise Position:** VARIES | **Supervisor Status:** VARIES | **Position Designation:** VARIES |

**PD Status:** VERIFIED

**Position Duties:**

MAJOR DUTIES

Serves as a Program Analyst developing, consolidating, and analyzing management, financial, and operational data for use by mission directorates. Works independently on assigned projects dealing with developing, reviewing, analyzing, and evaluating managerial policies and procedures related to the directorates segment of the maintenance mission.

1. Prepares independently, or participates in, the development, analysis, and dissemination of consolidated workload and resource data to mission work centers. Data and accompanying analysis portrays forecasted trends, resource requirements and workload distribution. Conducts studies regarding total organizational maintenance operations as related to manpower, facilities, capabilities, management improvement, productivity improvement, workflow, and resources. Recommends solutions to problems uncovered, in line with established management principles. Incumbent analyzes and advises the director on proposed directorate reorganizations, and analyses and provides guidance on most effective and efficient use of directorate resources.
50%

2. Compiles budget data for assigned organization for submission to the overall maintenance mission budget. Tracks expenditures against budget submission; provides a written justification or explanation for budget deviations. Budget elements typically include direct labor, indirect labor, material and supplies, overtime, etc. Uses and maintains a familiarity of ADP systems logic including source and description of input, methodology, file alignment, and file identification in order to gather, interpret, and analyze narrative and statistical information about organizational functions, workload, and productivity.
35%

3. Provides technical support to the director by participating in studies/projects to determine more efficient and effective ways of conducting maintenance management business through automation, including preparation of System Change Requests (SCR) that pertain to processes of the automated systems. Provides guidance and assistance to higher grade analysts and functional personnel tracking problems through ADP systems. Prepares command level briefings by extracting, analyzing, and formatting data from automated products, and by operating automated equipment for preparation of charts. Conducts audits of directorate operations to ensure compliance with regulations, directives, policies, and published guidance.
15%

Performs other duties as assigned.

Factor 1, Knowledge Required by Position Level 1-6 950 Points

An in-depth knowledge of directorate operations, performance measurements, and financial indices, and a working knowledge of automated processes and techniques to perform various analyses of organizational goals and performance.

Knowledge and analytical ability sufficient to conduct studies aimed at determining the effectiveness of the organizational structure, staffing, budgetary requirements, administrative procedures, or workload distribution.

Knowledge of and skill in applying conventional quantitative methods used to gather, analyze, and evaluate information concerning management processes and resources; draw conclusions; and recommend appropriate action.

Skill in written and oral communications sufficient to prepare and present findings and recommendations to managers and supervisors.

Factor 2, Supervisory Controls Level 2-3 275 Points

The supervisor or higher graded employee assigns specific projects in terms of issues, functions, or work processes to be studied and sets suspense dates for completing the work. The incumbent plans, coordinates, and carries out the successive steps in factfinding and analysis of issues required to complete each phase of the project. Work problems are normally resolved by the incumbent without recourse to the supervisor, but may be addressed for assistance by a higher graded analyst. Work is reviewed by the supervisor or higher graded analyst for conformance with overall requirements and objectives of the study. Findings and recommendations of projects are reviewed prior to action of management officials.

Factor 3, Guidelines Level 3-3 275 Points

A variety of guidelines is available, consisting of higher headquarters directives and instructions, local installation directives, and Policy Letters and Standing Operating Procedures. The incumbent analyzes the subject and uses judgment in choosing, interpreting, of adapting available guidelines to issues or projects studies. The incumbent may refine or develop more detailed guidelines, or make recommendations for changes to procedural guidelines for improvement of effectiveness and productivity in the administration of operating programs.

Factor 4, Complexity Level 4-3 150 Points

The work principally involves dealing with problems and relationships of a procedural nature. The incumbent applies

accepted techniques and systems to gather narrative and statistical information from a wide variety of sources to develop improved organizational structures, and workflow within the Maintenance Directorate. Incumbent surveys administrative support activities to determine compliance with applicable directives and procedures. A narrative report is prepared by the incumbent which contains a statement of issue, background, observations, and recommendations for action.

Factor 5, Scope and Effect Level 5-3 150 Points

The purpose of the work is to plan and carry out projects to improve the efficiency and productivity of the activities within the directorate. Applies accepted principles, methods, and guidelines for qualitative analysis of conventional problems and situations in work distribution, staffing, and organizational structure, and makes recommendations for resolution of such problems. Develops detailed procedures to supplement established directives and program guidance. Study conclusions and recommendations from the basis for management decisions affecting the efficiency and economy of the directorate operations.

Factor 6, Personal Contacts & Factor 7, Purpose of Contacts Level 2b 75 Points

The incumbent has recurring face-to-face contact with employees and supervisors within the directorate, and management officials of other directorates on the installation.

The purpose of contacts is to provide advice to managers on noncontroversial organization or program related issues and concerns.

Factor 8, Physical Demands Level 8-1 5 Points

The work is primarily sedentary, although some slight physical effort may be required.

Factor 9, Work Environment Level 9-1 5 Points

Work is typically performed in an adequately lighted office. May require occasional travel.

TOTAL POINTS: 1885 RANGE: 1855 TO 2100 GRADE: GS-09

**Fair Labor Standards Act (FLSA) Determination = ()**

**FLSA Comments/Explanations:**

**Position Evaluation:**

I. Reference:

a. Management and Program Analysis Series GS-343, Aug 90
b. Administrative Analysis Grade-Evaluation Guide, Aug 90

II. Series and Title Determination:

Subject position is established in mission directorates result of the reorganization of 1995. This position analyzes management, financial, and operational data for use by a mission directorate. The incumbent works independently on assigned projects dealing with developing, reviewing, analyzing, and evaluating managerial policies and procedures related to the directorates segment of the maintenance mission. The incumbent requires knowledge of the substantive organizational programs and activities and analytical and evaluative methods and techniques for assessing mission execution and efficiency. This meets the standard definition of the Management and Program Analysis Series, GS-343. Accordingly, the position is coded to GS-343 and titled, "Program Analyst."

III. Grade Determination:

The nine Factors have been assigned Levels and Points as follows:

Factors Level Points

Knowledge Required by the Position I-6 950
Supervisory Controls 2-3 275
Guidelines 3-3 275
Complexity 4-3 150
Scope and Effect 5-3 150
Personal Contacts 6-2
Purpose of Contacts 7-b 75
Physical Demands 8-1 5
work Environment 9-1 5

Total Points: 1885
Range: 1855-2100
Grade: GS-09

IV. PMC MCB Advisory Classification: Program Analyst, GS-343-09.


**Position Competencies:**

JS 44 (Rev. 10/20)

**CIVIL COVER SH**

Case: 4:22-cv-10001
Judge: Davis, Stephanie Dawkins
MJ: Altman, Kimberly G.
Filed: 01-03-2022 At 09:41 AM
CMP RAJA REJENDRAN V CHRISTINE WORMUTH (SS)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Raja Rajendran

**DEFENDANTS**
Christine Wormuth, Secretary, Department of the Army

**(b)** County of Residence of First Listed Plaintiff    Oakland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☑ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander     Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine     Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product     Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment   **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other   ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

442

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec 2000e-2(a)(1)
Brief description of cause:
National origin discrimination, retaliation, hostile work environment, breach of settlement, violation of procedures

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.      DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☑ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE                    DOCKET NUMBER

DATE
December 28, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.       Is this a case that has been previously dismissed?     ☐ Yes
                                                                                          ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.       Other than stated above, are there any pending or previously   ☐ Yes
               discontinued or dismissed companion cases in this or any other
               court, including state court? (Companion cases are matters in which  ☑ No
               it appears substantially similar evidence will be offered or the same
               or related parties are present and the cases arise out of the same
               transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :