## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Caption:

     RAJA RAJENDRAN

_____

_____

*Full name(s) of Plaintiff(s)*

v.

    CHRISTINE WORMUTH
    SECRETARY - DEPT OF ARMY

_____

*Full name(s) of Defendant(s)*

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

CIVIL ACTION
NO. 22-CV-1103 JMY

This action is brought for discrimination in employment pursuant to (check only those that apply):

    ☒   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
        ***NOTE:*** *In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

    ____   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634.
        ***NOTE:*** *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission, and you must have been at least 40 years old at the time you believe that you were discriminated against.*

    ____   Americans with Disability Act of 1990, as codified, 42 U.S.C. §§ 12112-12117.
        ***NOTE:*** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

    ☒   Pennsylvania Human Relations Act, as codified, 43 Pa. Cons. Stat. §§ 951-963 (race, color, family status, religious creed, ancestry, handicap or disability, age, sex, national origin, the use of a guide or support animal because of blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals).

(Rev. 10/2009)

-1-

**NOTE:** *In order to bring suit in federal district court under the Pennsylvania Human Relations Act, you must first file a complaint with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations, and then you must wait one year prior to filing a lawsuit.*

## I.    Parties in this complaint:

A.    List your name, address and telephone number.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff    Name: RAJA RAJENDRAN
Street Address: 5179 Shadycreek drive
County, City: TROY
State & Zip: MI - 48085
Telephone Number: 248-591-2747 (H)   848-354-5762 (c)

B.    List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page.  Attach additional sheets of paper as necessary.

Defendant    Name: CHRISTINE WORMUTH
Street Address: 101 ARMY PENTAGON
County, City: WASHINGTON DC
State & Zip: DC - 20350-1000
Telephone Number:

C.    The address at which I sought employment or was employed by the defendant(s) is:

Employer: TOBYHANNA ARMY DEPOT
Street Address: 11 MAP ARNOLD BLVD
County, City: TOBYHANNA
State & Zip: PA - 18466 - 5038
Telephone Number: 570 - 615 - 7000

## II.    Statement of the Claim

A.    The discriminatory conduct of which I complain in this action includes (*check only those that apply to your case*):

_____ Failure to hire me

__X__ Termination of my employment   CONSTRUCTIVELY DISCHARGED

__X__ Failure to promote me  (Ladder position)

-2-

_____ Failure to reasonably accommodate my disability

_____ Failure to reasonably accommodate my religion

__✗__ Failure to stop harassment

_____ Unequal terms and conditions of my employment

__✗__ Retaliation

__✗__ Other (*specify*): DISREGARDED OFO ORDER _____

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

B.    It is my best recollection that the alleged discriminatory acts occurred or began on or about:
(month) FEB ___, (day) 22 ___, (year) 2010 ___.

C.    I believe that the defendant(s) (check one):

__✗__    is still committing these acts against me.
_____    is **not** still committing these acts against me.

D.    Defendant(s) discriminated against me based on my (*check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged*):

_____    race _____          _____    color _____

_____    religion _____          _____    gender/sex _____

__✗__    national origin ASIAN - INDIAN

_____    age    My date of birth is _____ (*Give your date of birth only if you are asserting a claim of age discrimination)*

E.    The facts of my case are as follow (*attach additional sheets of paper as necessary):*

PLEASE SEE ATTACHED ADDENDUM _____
_____
_____
_____
_____
_____
_____

-3-

NOTE: *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the Pennsylvania Human Relations Commission, or the Philadelphia Commission on Human Relations.*

**III.    Exhaustion of Administrative Remedies:**

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on: __Aug. 18 2016__ *(Date)*.

B.    The Equal Employment Opportunity Commission (*check one*):

    __x__    has not issued a Notice of Right to Sue Letter. ON SOME COMPLAINTS ALJ DID NOT PASS A VERDICT THOUGH A HEARING WAS HELD

    __x__    issued a Notice of Right to Sue Letter, which I received on __OCT-12-2021__ *(Date)*.

NOTE: *Attach to this complaint a copy of the Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

C.    *Only plaintiffs alleging age discrimination must answer this question.*

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct (*check one*):

    ____    60 days or more have passed.
    ____    fewer than 60 days have passed.

D.    It is my best recollection that I filed a charge with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct on: _____ *(Date)*.

E.    Since filing my charge of discrimination with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct (*check one*):

    ____    One year or more has passed.
    ____    Less than one year has passed.

## IV.   Relief

**WHEREFORE**, Plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs as well as (*check only those that apply*):

_____   Direct the defendant to hire the plaintiff.

_____   Direct the defendant to re-employ the plaintiff.

_____   Direct the defendant to promote the plaintiff.

_____   Direct the defendant to reasonably accommodate the plaintiff's disabilities.

_____   Direct the defendant to reasonably accommodate the plaintiff's religion.

_____   Direct the defendant to (*specify*):_____

_____   If available, grant the plaintiff appropriate injunctive relief, lost wages,
         liquidated/double damages, front pay, compensatory damages, punitive damages,
         prejudgment interest, post-judgment interest, and costs, including reasonable
         attorney fees and expert witness fees.

_____   Other (*specify*):___PLEASE  SEE  ATTACHED  ADDENDUM_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _8_ day of __April__, 20_22_.

Signature of Plaintiff _____

Address _____
         5179 - Shadycreek Drive
         TROY
         MI- 48085

Telephone number   248-524-2747(H) 248-824-5762 (c)

Fax number (*if you have one*)   248-524-2747

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAJA RAJENDRAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.: |
| v. | ) 22-CV-1103 JMY |
| | ) |
| CHRISTINE WORMUTH, Secretary, Department of | ) |
| the Army, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION - ADDENDUM

### *II. Statement of the claim*

**E.** The facts of my case are as follows

### I.    JURISDICTION

1.      The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 and 1343. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil rights Act of 1964", as amended, including the Civil Rights Act of 1991. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of right secured by 42 U.S.C. § 1983 and 2000e *et seq.* providing for relief against unlawful discriminatory practices involving retention, compensation, and other terms and conditions of employment in failing to remedy systemic employment discrimination on the basis of race, national origin, and retaliation.

2.      The Plaintiff exhausted all administrative remedies and has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the Civil Rights Act of 1991, 42 U.S.C. 2000e *et seq.*

3.      The Plaintiff timely filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 18, 2010, alleging discrimination based on national origin (Asian/Indian). On December 23, 2010, the complaint was amended which the Defendant Agency accepted.

4.      In Dec 2010 the Agency and the Plaintiff entered into a negotiated settlement agreement (NSA), where the Plaintiff agreed to drop all the charges (which included dropping of grievance with the union), resign the position for a monetary compensation. The Agency defaulted the NSA with partial compliance.  Plaintiff appealed this to OFO. OFO ordered Agency to offer an option to the Plaintiff either to refund the partial amount received, void the NSA and offer the Plaintiff his status quo position or enforce the agency to fully comply with the OFO's order. The Plaintiff chose to repay the partial money received, reinstate the complaint and to be placed on the status quo position. Plaintiff returned the money but the agency placed the Plaintiff in a different department on a different position description targeted for a GS 9 level Program Analyst. Agency also expected Plaintiff to perform at a GS13 level, while compensating at a GS 7 level, resulting in constructive discharge forcing the Plaintiff to resign. Plaintiff timely requested OFO to order the Agency to comply with the order regarding status quo position and reinstating grievance with the union.

5.      After all necessary Agency investigation procedures were exhausted, Plaintiff requested a hearing before an Administrative Judge appointed by the EEOC in accordance with its regulations.  The Administrative Judge ordered to provide complaints and events chronologically and warned that failure to do so will result in dismissal of the case. Plaintiff provided the events chronologically and amended with several additional complaints including a complaint that Agency failed to reinstate a status quo position per OFO's order. Agency named several witness

2

who would testify that the position was consistent with OFO's order. A hearing was subsequently scheduled and held over four days: April 18, 2016; April19, 2016; May 19, 2016, and August 2, 2016. The Administrative Judge also heard from Agency's witness regarding reinstatement of status quo position per OFO's order.

6.      The Administrative Judge issued a decision on July 28, 2020 finding that no discrimination or reprisal occurred but did not render a verdict on the noncompliance on the OFO order issue.  An appeal was filed on August 28, 2020.

7.      On May 25, 2021, Plaintiff's appeal was denied, and the Agency's final decision was affirmed.  Plaintiff timely filed a first Reconsideration Request on or about June 23, 2021, and this first Reconsideration Request was denied by decision dated October 12, 2021.  Plaintiff filed a second Reconsideration Request on November 17, 2021, which was also denied.

8.      Plaintiff timely filed this Complaint within 90 days of when Plaintiff received the decision of the EEOC on the first reconsideration of appeal.

9.      Venue is proper in this Court 28 USC 1391(e)(1)(C) as a civil against an officer or employee of the United States or any agency thereof acting in official capacity may be brought in any judicial district in which the plaintiff resides if no real property is involved.  Real property is not involved in this case.

**II.     PARTIES**

10.     The Plaintiff, Raja Rajendran (hereinafter, "Plaintiff"), is over the age of nineteen, a citizen of the United States, a resident of the State of Michigan at all relevant times and was employed by the Defendant at all times material herein.

3

11.     The Defendant, Christine Wormuth, Secretary, Department of the Amy is the President's appointed chief representative of the United States Department of the Army[1]. At all times relevant to his suit, the Department of the Army was the employer for the purposes of Title VII and is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. 200 e *et seq*.

## III.     FACTUAL ALLEGATIONS

12.     The defendant discriminated against Plaintiff Rajendran because of his national origin (Asian/Indian), in job assignments, wages, promotions, discipline and other terms conditions and privileges of employment.

13.     Plaintiff, Raja Rajendran with a Master's degree in Mechanical Engineering, was a Mechanical Engineer on a career ladder, acquisition position (FPL GS-11), GS-9, at the Agency's Tobyhanna Army Depot facility. Plaintiff also had level 3 certification in SYSTEMS PLANNING RESEARCH DEV AND ENG (SPRDE) which was a requirement for acquisition position for engineers, and in addition had a level 2 certification in Program Management all from Defense Acquisition University (DAU). Plaintiff began his employment at Tobyhanna Army Depot on March 15, 2009.

14.     Starting in April 2009, Plaintiff's first line supervisor was Chief, C3 Avionics Engineer Branch, Jeff Morman, and second line supervisor, was Chief of Maintenance Engineering Division, Mark Viola.

15.     Plaintiff several times requested training which was denied by his supervisors. This even included a course to attain certification in professional engineering (PE) which upper

---

[1] At the time of Plaintiff's initial complaint with the EEOC, John M. McHugh was the acting Secretary of the Army.

management mandated subordinate engineers to attend. This certification enables one to certify designs in their discipline. (Plaintiff had already successfully passed EIT/FE which is a pre-requisite for PE.)

16.     Plaintiff filed an EEOC complaint on August 18, 2010.

17.     On August 23, 2010 Plaintiff had forgotten to sign-in in the morning and the Defendant considered this AWOL (absence without leave) and suspended Plaintiff for three (3) days without pay in addition to nonpayment for 1.5 hours on the day of forgetting to sign. 3 day suspension is not proper for this alleged offense.

18.     Supervisor Morman stated that he suspended Plaintiff because he was not aware of the whereabouts of the Plaintiff on the day Plaintiff forgot to sign. Mr. Morman also stated that he would give to anyone an opportunity to explain but he failed to give Plaintiff an opportunity to explain his whereabouts.

19.     Another employee who was a Caucasian reporting to Supervisor Morman did not sign in to roll call and was later reminded to sign in at noon. Mr. Morman indicated that if other employees did not sign in that he would remind them, however, he did not remind Plaintiff was to sign in.

20.     To defend their disciplinary action, Defendant brought up an incident where a comparator, a male Caucasian employee Larry Frable had committed multiple severe offenses - 1) creating bodily injury and pain by kicking a female employee, 2) using profane language at the female employee (which the second line supervisor Mr. Viola refused to even utter that language at the hearing)   and 3) kicking a car door in the parking lot (as believed by EEOC ALJ). However, Plaintiff received more severe consequence for milder offences which included 1) forgetting to sign-in and 2) inability to attend a training requiring travel, as a result of failure to reserve a rental

5

car by the Travel department, denial of every other mode of transportation requested by the Plaintiff by Mr. Morman and stringent constraints requiring the Plaintiff to travel 555 miles on a Sunday from home in Michigan to secure the "unreserved" rental car in PA in spite of explaining the difficulties. Plaintiff admitted to forgetting to sign-in and received 3 day suspension with no pay and lost wage for 1.5 hours, whereas the Caucasian employee Larry Frable admitted to his guilt and received NO disciplinary action at all. Forgetting to sign-in is not on the list of table of punishable offenses.

21.    Plaintiff forgetting to sign-in was treated as AWOL because the supervisor Mr. Morman was unaware about Plaintiff's whereabouts. Not knowing Plaintiff's whereabouts should not be considered as AWOL and is not proper for this alleged offense especially when the Plaintiff is expected to be at a large (nearly a square mile) shop floor area and not expected to be always at his seat.

22.    Plaintiff received untruthful review on the Douglas factor that he was not getting along with others while customers' feedback about Plaintiff included "nice guy" "gentle man" "very easy going personality" "very easy to get along" "all around likable guy" etc., and never a negative comment.

23.    Plaintiff was rated "excellent" on the annual performance review in 2009. After filing EEOC complaint, Plaintiff received negative performance review in 2010 and it was stated he could not get along with other people even through evidences show he got along with other employees who made positive comments such as "nice guy" "gentle man" "very easy going personality" "very easy to get along" "all around likable guy" etc. and never a negative comment. This is discrimination based on retaliation.

24.     Other Caucasian employees did not get along with other employees including one employee who swore at the Plaintiff and bragged about it and yet this incident was not escalated by Supervisor Morman nor any disciplinary action taken.

25.     The Defendant accused Plaintiff of not attending training, however, the Defendant placed stringent constraints on travel arrangements that was not applied to other Caucasian employees. Defendant failed to make proper reservations and gave misleading instructions for training making it impossible for Plaintiff to attend the training, and then accused Plaintiff of missing training.

26.     That on August 27, 2010, Plaintiff requested a rental car and the Defendant initially agreed to bear the cost but then this request was denied after the EEOC complaint was filed.

27.     Plaintiff was denied training that other similarly situated Caucasian employees were allowed to take.

28.     Plaintiff's position was downgraded from Mechanical Engineer (GS-09) to Engineering Technician (GS-07), removed from a ladder position and removed from an acquisition position, as a retaliation for filing an EEOC complaint that was being processed.

29.     Plaintiff and the Agency entered into a Settlement Agreement (NSA) on or about January 20, 2011.

30.     That the Agency breached the Settlement Agreement and the EEOC ordered the Agency to notify Plaintiff to either (1) cancel the terms on the NSA, return the settlement payment, reinstate the EEOC case, and Agency to offer Plaintiff a status quo position or (2) Agency to comply with the terms of the NSA and dismiss the EEOC case.

31.     Plaintiff agreed to return the settlement money to Agency within the timeframe, reinstate the EEOC case and to accept reinstatement to a status quo position with the Agency.

32.     Plaintiff's position with the Agency was reinstated in September 2013 to a non-status quo position and Agency failed to reverse other terms on the NSA, specifically reinstating the grievance with labor union.

33.     The Defendant accused Plaintiff of not attending training, however, the Defendant placed stringent constraints on the training not applied to other Caucasian employees and failed to make proper reservations for training and then accused Plaintiff of missing training.

34.     That on August 27, 2010, Plaintiff requested a rental car and the Defendant initially agreed to bear the cost but later denied the request after the EEOC complaint was filed. This is discrimination based on retaliation.

35.     After the complaint was filed Plaintiff's travel expenses were not fully reimbursed. This is discrimination based on retaliation.

36.     Plaintiff was not allowed to directly leave from home for travel to TDY site and was required to stop at the depot (on a Sunday) before traveling to TDY site, however other employees were given this option of leaving from home.

37.     Plaintiff was denied training that other similarly situated Caucasian employees were allowed to take.

38.     Plaintiff's position was downgraded from Mechanical Engineer (GS-09) to Engineering Technician (GS-07), removed from a ladder position and removed from an acquisition position, as a retaliation for filing an EEOC complaint that was being processed.

39.     In September 2013, when Plaintiff was reinstated he discovered that it was not a status-quo position. Defendant had retaliated by not giving Plaintiff a status quo position as required and placed the Plaintiff in an entirely different branch "SATCOM" (58110) on a position description for a program analyst at a GS 9 level. This is also a non-compliance of the OFO order.

8

40.     The Plaintiff immediately prepared a non-compliance memo and submitted it in a timely manner in 2013 requesting that the Defendant comply with the order to reinstate to status quo position.

41.     Mr. Morman asked Mr. Keith Hoffman to place Plaintiff on PIP (Performance Improvement Plan). This was later dropped since Plaintiff was not working in the position that Mr. Morman had recommended to place Plaintiff on PIP.

42.     Agency did not follow the correct procedure to demote Plaintiff from GS-9 Engineer to GS-7 technician position.

43.     Plaintiff should have been promoted to GS-11 at the end of the first year per ladder position. Not promoting Plaintiff without a valid reason is a procedural violation.

44.     Removing Plaintiff from acquisition position is a procedural violation.

45.     Removing Plaintiff from ladder position is a procedural violation.


IV.     **CLAIMS**

**COUNT I – NATIONAL ORIGIN DISCRIMINATION-DISPARATE TREATMENT**

46.     The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

47.     The Defendant discriminated against the plaintiff because of his national origin (Asian/Indian) in the terms, conditions, and privileges of employment.

48.     Plaintiff was not provided training, disciplined, given downgraded positions, given negative performance reviews than Caucasian employees.

49.     Plaintiff was disciplined and suspended for conduct wherein Caucasian employees were not reprimanded or suspended for the same or worse conduct.

50.     Defendant retaliated against Plaintiff due to his Asian/Indian national origin and due to his complaints of discrimination

51.     Plaintiff Raja Rajendran is a member of a protected class.

52.     Plaintiff was in a carrier ladder position GS-9 (FPL GS-11). At the end of the first year he was not promoted to a GS 11 position without and explanation or any valid reason which is in violation of procedure, in spite of having met all major performance objectives and rated "excellent" on the performance review. All the comparators, who were not of Asian Indian origin, who were GS 9 engineers on ladder position reporting to Mr. Morman were promoted to GS 11. (Nick Samolesky, Carman Trubia and Nguyen Phu who were engineers on ladder position to FPL 11 were promoted to GS11 after completing one year as GS 9).

53.     As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

### COUNT II – RETALIATION

54.     The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

55.     The Defendant retaliated against the Plaintiff for the Plaintiff's act of objecting to and reporting acts of national origin discrimination and harassment.

56.     When the Plaintiff reported and filed formal complaint of acts of discrimination and harassment, that was currently being investigated, the Defendant retaliated against Plaintiff including but not limited to demoting the Plaintiff, taking disciplinary action with comparatively severe consequence for forgetting to sign-in and giving Plaintiff a non-status quo position.

57.    The Defendant, by and through its agents, engages in the practices complained of herein with malice and/or reckless indifference to the Plaintiff's federally protected rights.

58.    As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

## COUNT III – HOSTILE WORK ENVIRONMENT

59.    The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

60.    The Defendant discriminated against the Plaintiff because of this national origin (Asian/Indian) in the terms, conditions, and privileges of employment as stated herein.

61.    Defendant was given less desirable positions and demoted and was wrongfully disciplined and harassed.

62.    Plaintiff was denied training multiple times by Defendant in spite of repeated requests.

63.    Plaintiff was subjected to a hostile work environment because he was forced to endure the humiliation and embarrassment of not receiving the same benefits afforded to other similarly situated Caucasian employees.

64.    As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career

significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

## COUNT IV – NON COMPLIANCE TO OFO's ORDER

65.     The Plaintiff adopts and re-asserts each and every allegation contained in the previous paragraphs as if fully set out herein.

66.     Plaintiff and the Agency entered into a Settlement Agreement on or about January 20, 2011. (A copy of the Agreement is in the possession of the Defendant)

67.     That the Agency breached the Settlement Agreement and the EEOC ordered the Agency to notify Plaintiff to either (1) cancel the terms on the NSA and return the settlement payment, reinstate the EEOC case, and to offer Plaintiff a status quo position cancelling the Settlement Agreement, or (2) the agency to comply with the terms of the NSA and dismiss the EEOC case.

68.     The Plaintiff agreed to return the settlement money to the Agency within the timeframe and reinstate the EEOC case and to accept reinstatement to a status quo position with the Agency.

69.     Plaintiff's position with the Agency was reinstated in September 2013 to a non-status quo position with compensation at GS-7 and expectation at GS-14 and position description as GS-9 with job function of a Program Analyst.

70.     As a result of the foregoing, Plaintiff was caused to be injured and damages; to have to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted, to suffer demotion; and to endure mental anguish, emotional distress, humiliation, and shame.

71.     That Plaintiff complied with the terms of the Settlement Agreement and should be reinstated to his previous position with full pay, benefits and back pay and lost benefits.

## COUNT V - VIOLATION OF PROCEDURES

72.     After the complaint was filed, disciplinary actions were taken when Plaintiff could not attend training for reasons beyond his control, which is not punishable and which violates the procedure.

73.     Plaintiff was in a carrier ladder position (FPL GS 11) and at the end of the first year was not promoted to a GS 11 position without and explanation or reason which is in violation of procedure, while all the comparators who were not of Asian Indian origin, who were GS-9 on ladder position were promoted to GS-11. (Nick Samolesky, Carman Trubia and Nguyen Phu who were engineers on ladder position were promoted to GS-11 after completing one year as GS-9)

74.     Recommending putting Plaintiff on PIP on a position even before the Plaintiff was in that position is in violation of procedure.

75.     Mr. Morman rejected Plaintiff's request to attend a course to attain certification in professional engineering (PE) which upper management mandated subordinate engineers to attend. This is a violation of procedure.

76.     Around Nov. 2010, Supervisor Morman took action to remove the plaintiff from engineer role to technician without any reason against the recommendation of MER. Plaintiff was ultimately demoted to technician role to a GS07 level around Dec 2010. Defendant did not want to keep plaintiff in an engineering slot. This is in violation of procedure.

77.     When complaints were received about other employees working for Mr. Morman for job delays he never took any action, however Plaintiff was demoted.

13

78.     Failure to change Plaintiff's annual leave to administrative leave for time spent attending interviews with other federal agencies is a violation of procedure.

79.     Failure to return Plaintiff's personal belongings including CD's and DVD's

80.     Failure to give Plaintiff access to email and phone messages

81.     Failure to give Plaintiff access to all the information he had on his hard drive, including Villanova university class notes.

82.     Failure to restore Plaintiff's moving expense reimbursement

83.     Plaintiff was required to complete 40 hours of training amidst training denials and cancellations.

84.     Jobs completed by Plaintiff transferred to another coworker and not giving any credit for the work to Plaintiff while giving credit to the other co-worker.

85.     Mr. Morman accused Plaintiff of not developing rain test procedure after Plaintiff completed the work, and transferred the work and status report to another co-worker.

86.     Mr. Morman sought feedback based on alleged oral complaints against Plaintiff but never took action on multiple more serious and written complaints on other people.

87.     Unreimbursed travel expenses as follows:

1) Comp time for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010

2) Travel mileage for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010

3) Hotel stay for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Plaintiff did not make this trip)

4) Toll charges for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management claims Plaintiff did not make this trip)

5) Per diem for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 (Management

14

claims Plaintiff did not make this trip)

6) Comp time for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010

7) Reduced compensation for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010

(By altering my travel expense form)

8) Reduced hotel stay for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010

(By altering my travel expense form)

9) Reduced per diem for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 (by

altering my travel expense form)

10) Administrative leave for the travel time to attend a federal job interview at

Picatinny, NJ on 9th Dec 2010.

88. Additional allegations and remedies sought are listed in the attached document

"complainant's amended prehearing statement" as listed here.

There are numerous allegations concerning the Agency's failure to restore Plaintiffs

to his pre-NSA status quo, in violation of the Commissions' Order, including, but not

limited to the following

a. Failing to reinstate Plaintiff to his pre-NSA position as a Technician under the

C4ISR Maintenance Engineering Division, C3/Avionics Branch;

b. Failing to reinstate Plaintiff's union grievance;
c. Failing to put Plaintiff in an acquisition position;
d. Failing to reimburse Plaintiff for TDY and related trips;
e. Failing to change Plaintiff's annual leave to administrative leave for the time spent
in attending interviews with other federal agencies;
f. Failing to pay for a 3-day suspension it agreed to do prior to the failed settlement
agreement.
g. Failing to return Plaintiff's personal belongings, including CD's and DVD's;
    h. Failing to give Plaintiff access to email and phone messages;
i. Failing to give Plaintiff access to all the information he had on his hard drive,
    including his Villanova University class notes;
j. Failing to restore Plaintiff's moving expense reimbursement.

15

k. Failing to reinstate ladder position.

A complete list of complaints submitted by Plaintiff in his amended complaints to EEOC, are listed below. ALJ ordered that these be provided chronologically, however they were not heard.

3/15/2009    I was hired under developmental position which requires TYAD to provide training or provided opportunity and time to develop skills. The position requires that I strive to complete 40 hours of training annually. I had to struggle to meet this requirement due to all the training denial and cancellations. While Jeff himself is a new employee and still in the learning process (as of 9 Feb 2010), he is accusing me of being a poor performance when I am in the learning process.

6/12/2009    Jobs that I completed were transferred to other co-worker not giving any credit to my effort while complete credit was given to the co-worker who took over from me, due to discrimination based on national origin, age, religion and race.                                    National Origin

6/12/2009    Jeff Morman accused me of not completing any task. The Rain test procedure assignment (Page # 240 of RTS 3 of file rajendran_artyad10jul03318_ROI_part1.pdf) was transferred to Al after I completed the work and on the status report it was indicated that he completed the work (Page # 240 RTS3 & 267 )

6/26/2009    Jeff Morman sought feedback based on alleged oral complaints against me, however he did not take on action on other employees even though he received multiple much more serious written complaints  (4 page complaints) (page 260) about multiple other employees

6/30/2009    When Brad Jones complained about Dave Dudzinski that several jobs were still not complete for several months as of 6/30/2009 and referenced April 2009. I started in TYAD in March 2009 and after a lengthy new employee orientation and computer access training I acrually started working in April/May 2009. The complaint was on Dave Dudzinski and no action was taken on him. Instead Dave was given an instantaneous cash award in 2009. However, based on verbal complaints from shop floor, Jeff Morman took instantaneous action to demote me instead of promoting me to my target grade FPL-11. It is a discrimination based on national origin, age, religion and race.                                    National Origin

7/21/2009    Supervisor of Structural Repair David B stated (page #318) "I have not had whole lot of dealings with Raja" and "usually". This does not add up. He also stated, "We sometimes wait for hours for him to show up." It is not reasonable to expect that I have to drop what I am doing to attend to him immediately. What would have been better is for him to schedule an appointment with me at a mutually agreed upon time. "In my opinion he is not very knowledgeable". He admits he had formed an opinion about me without dealing with me much. Again this is his OPINION without any basis. "I know Ruth also had  him for support" " was not happy with his support either". " When Ruth asked him for support, he basically asked her what she needed. Instead of providing answers he provided her with questions". This is second hand information. Also, it is the right thing to ask questions before providing answers. It is NOT a negative comment.

8/24/2009    Several jobs were assigned to me when other co-workers did not want to perform what    National Origin
was assigned to them, (jobs not completed for over six months). I was accused of not
completing with in time frame that Jeff believes in his mind. It is a discrimination based
on national origin, age, religion and race.

8/25/2009    I was to work alone without any assistance, when the jobs were reassigned to others they    National Origin
were offered assistance, (I was also orally reprimanded when I assigned a insignificant
portion of a small task to a SCEP student). It is a discrimination based on national origin,
age, religion and race.

11/20/2009    Supervisor Atcals Glenn G stated (page #319) "The project he was working on was passed
on from Don Cook and didn't seem that complicated" "I learned later that it mod didn't
work". I was not communicated that there was an issue or what it was about. It appears
from his statement that he also did not know what the issue was.
"My second experience with Raja involves a tent (canvas) project for building 310" ".... he
informed me that he had talked to some vendors. That was several weeks ago. I haven't
heard anything except I learned that Jay Ceriani was working on getting the canvas.
Personally, Raja just did not seem to have a clue on what was being asked of him." The
requirement was for an outside tent roughly 40' X 40', about 30 ' high, for working inside
in the winter, with a top that opens to drop heavy components using crane and capable
of withstanding several feet of snow. Any flaw in the design can potentially result in
death. The initial design comes from the supplier, requiring a serious calculation, design
and simulation etc. Glenn did not understand that this was a massive undertaking and
was expecting quick results. His accusation was baseless since I was able to get quote for
the tent meeting all the criteria from Custom Canvas Manufacturing Company on Dec
10th 2009, in less than 3 weeks from then. I did not know who Jay is or why he was
buying canvas. After I provided the quotation, it the management's decision to go
forward or not. It is beyond my control at that point. I should not be blamed.

12/1/2009    Undue restrictions were placed forbidding my presence in various places within the    National Origin
Depot due to discrimination based on national origin, age, religion and race.

12/2/2009    My request to take a class at Wilkes University titled "PE in Mechanical concentration in    National Origin
heat and mass transfer" (Jan 16 2010 - April 3 2010) was denied. TYAD has approved this
training for George Galaydick from PED and 15 others in the depot. I requested the list of
TYAD employees who took this training was requested through EEOC but TYAD
responded that they do not have this information. However this information was
requested and obtained through FOIA (Freedom of information act). It is a discrimination
based on national origin, age, religion and race.

12/2/2009    Jeff Morman denied my application to attend PE training "PE in Mechanical concentration in heat and mass transfer" (weekends Jan 16th - Apr 3rd 2010) in Wilkes University, PA. Tyad has approved this training for George Galaydick from PED and 15 others in the depot. I requested the list of TYAD employees who took this training was requested through EEOC but TYAD responded that they do not have this information. However this information was requested and obtained through FOIA (Freedom of information act)

12/29/2009    Manufacturing Support Division Chief Deborah S stated (page #309) "Raja does not seem to understand the process too well and isn't grasping it." I had no interaction with Deborah except for getting authorization for making parts in the machine shop. "You must continue to follow up with him to ensure what you asked is being worked. No sense of urgency. We needed a leveling leg for the UAV and machine shop needed a drawing. Approximately a week or so later we followed up with Raja and he pulled it out from under his pile and we walked him down the machine shop." This is a lie and was completely made up at Jeff's request in my opinion. I never generated drawing for leveling leg. ALL my drawings are stored in an organized manner, in my computer as electronic copies. I print them out as I need them. I never had a pile or never needed to pull them from a Pile. The language used here "we walked him down" is very unprofessional.

1/4/2010    Jeff Morman did not analyze whether the feedback on Raja from other employees against Raja were truthful or if they made sense. He only noted whether they were positive or negative. Example below. None of these complaints were brought to my attention so never got an opportunity to defend myself. (Page # 297 - 321) Someone without an open mind will not look at both side perspectives and form a bad opinion about me. There is also positive feedback from some employees, however, I am taking this opportunity that I was never given before, to defend myself. These negative comments were brought to my attention only on 7 Oct 2010 during Fact Finding Conference.

18

1/4/2010    Machine Shop Supervisor Zigmund P stated (page #307) "He does not know what he is trying to display or information to pass on". I do not understand what is being conveyed here. My only interaction with him was that, I just provided drawings and he made the part. I do not know, how can anyone possibly make such a statement.
"Prints that he supplies dimensions do not add up on prints or they are in poor quality" - I only provided computer generated drawings. It is impossible to generate Pro-E drawings where dimensions do not add up. The software does not allow that. The quality depends on the printer. I believe I printed them from a good printer. If the quality of the print is bad, he could ask me for a better print. He never requested for a better print ever.
He said "Many of times he returned with items after completion and asked if "just take a little bit more of this angle" or "a hole goes somewhere". " This is known as "engineering revision", but he made it sound to make me look incompetent. I do not recall making any revision, however it extremely common to revise in engineering field.
"Many of his projects for extra work after initial parts were made to print and did not work". This never happened, however it is common.

1/4/2010    Sheet Metal Mechanic Supervisor William M stated (page #310) "You need to ask him 2-3 times for assistance. All he has to do was to send ONE email, instead of 2-3 times. However this never happened. You get the information needed when someone leads him to the answer. This was made up at Jeff's request in my opinion. I hardly had any interaction with him. He added "nice guy", this contradicts comment made by Jeff that I will confront them if he revealed their names.

1/4/2010    AC Shop Leader Mike D stated (page #312)"Raja went on vacation after looking at the problem. He may have gone too long. The customer called the factory for help." "drawings for canvas cover for an ECU, and I don't know  what was done with it". I do not recall these incidents happening, but even if they did, he also has a duty to follow up or remind me. "He came down to the shop and said he was sent down to look at something. He didn't know what it was that he was to look at, and neither did I. I sent him off to find out what he was to look at. I still haven't heard from him regarding what he was to look at". I was informed that shop needed some help from me but did not have any further details. My attempt to find out what the problem was failed. It was Mike who did not have any clue about the problem.

1/5/2010    Industrial Service Division Chief Mike Fisher stated (page # 314) "This gentleman is simply inept and lacks motivation to ask questions or get help." "He is afraid to do anything without first asking his mentor Dan O'Fier." There was no basis for these statements. Also, these two statements are contradicting since I was seeking help (which is positive since I am seeking help) - not due to lack of mechanical engineering knowledge (Dan's background is electrical) and has very good knowledge of Depot Operations. I have successfully patented a complex design of "CVT-continuous variable transmission" along with my son Prashanth Rajendran who was terminated from TYAD stating that "Depot efficiency will improve by not hiring him." To show I am not inept I am including information regarding my patent work.

1/6/2010    Power Generator Supervisor Stephen D "He was asking us to do some off the wall things like putting in extra fittings to get pressure readings on different areas of ECU, which did not make any sense to me or AC mechanics. The bottom line with this issue is it took so long to get any workable guidance the building 72 people had brought in contractors to repair this unit." The problem was frequent compressor failure. I wanted to determine the state of the fluid as it enters the compressor. For this, I needed the pressure and temperature to do the calculation. I explained the theory and brought Jeff Morman up to speed on basic thermodynamics in August 2009. Per Jeff's email on Sept 14th 2009 Jeff was in agreement with my approach! Since Stephen D refused to perform this, I could not proceed. This was brought to Jeff Morman's attention on Sept 14th at 10:16AM. Jeff responded with "OK Thanks" at 12:28PM. He chose not to do anything about the problem. RTS 19 (Page 241 of part1 file) assigned to Brian was closed with a note "Provided suggestion. Shop did not concur. Closed". This case is very similar to my assignment involving pressure readings. In this case the assignment was considered closed. However in my case it was not closed and Jeff Morman turned it into a complaint.
"We needed a new R-BOM" "Raja had the action for days and was getting nowhere. I basically put the R-BOM together and gave it to Raja so these parts could be ordered." (Page # 316)
Jeff emailed me on 9Feb 2010 that PED do not generate R-BOMs and he is not sure who is responsible for the RBOM. Things needed for production should be ordered by Production Management.
Jeff emailed Frank, Edigio (on a different project) stating "My group (Raja) does not create BOM/Routes. I would assume this part will go to the manufacturing cell/shop and as such PED has a hard time in getting the parts made due to charging the work to an indirect work order".
Stephen D, also added that I am "very easy to get along with and an all around likable guy", this contradicts comment made by Jeff that I will confront them if he revealed their names.


2/11/2010   Jeff received a letter of appreciation from Nancy Jinselli commending my prompt and diligent work. I was in a ladder position and I should have been automatically promoted to GS 11 position without competition. Jeff chose to ignore this positive comment and use some exaggerated, unrelated and minor negative comments to not promote me to GS 11 position. Jeff always thought that I was a GS 11 and I had to frequently remind him that I was a GS 09.

| | | |
|---|---|---|
| 2/22/2010 | Jeff Morman denied my first application to attend PMT250 on-line training starting between Feb 22nd - Sep 39th 2010 and had 6 months to complete from start date. I had stated in my application that "I must have this training to improve performance". I could work at my leisure and there was no urgency.  Jeff Morman first said that he did not remember getting an application from me. Once the proof was provided that I had applied, he claimed that he said that there is no value in attending the training.  However TYAD had approved similar training for other employees that will help in improved performance and help in career development, was denied while Jeff has approved similar career developmental courses to other employees. Jeff lied in his rebuttal that he never saw my application. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 2/24/2010 | Registration for Pro-E Data Management class Feb 26 - Feb 27 2010, per recommendation by George Wolfe, was denied by Jeff Morman It is a discrimination based on national origin, age, religion and race. | National Origin |
| 2/24/2010 | Jeff Morman denied my application to attend PRO-E Data Management training Feb 26 - Feb 27 2010. This training had been strongly recommended by George Wolfe who held a high position in data management for both Jeff Morman and myself. | |
| 2/25/2010 | Jeff Morman denied my second application to attend PMT250 on-line training starting between Feb 25 4th - Sep 30th 2010 and had one year to complete from start date. I had stated in my application that "I must have this training to improve performance and agreed work during non-duty times. Please approve this course".  Jeff Morman said that I am working on a project and so I should apply in "April/May" timeframe.  However TYAD had approved similar training for other employees, Jeff lied in his rebuttal that he never saw my application. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 3/2/2010 | Jeff Morman denied my third application to attend PMT250 on-line training starting between Mar 11th - Sep 30th 2010 and had one year to complete from start date. I had stated that I will work on the training during off-duty hours and weekends.  However TYAD had approved similar training for other employees, Jeff lied in his rebuttal that he never saw my application. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 3/15/2010 | By end of my first work anniversary at TYAD, since I am on a ladder position, if I had met my performance requirements for GS-830-9 I should have automatically been promoted to GS-830-11. Per Jeff's as of 12th Jan 2010, performance assessment, I have met all the major performance objectives. He also stated on 4th Feb 2010, that my performance leveled off, meaning i have met the requirements as of 4th Feb 2010. On 15 March 2010, unless my performance deteriorated between 4th Feb and 15 March, for which there is no evidence. However I was not automatically promoted to GS 11, It is a discrimination based on national origin, age, religion and race. | National Origin |

3/31/2010     Jeff Morman denied my application to attend PRO-E training Apr 1st - Apr 9th 2010 in
              Ann Arbor, MI. This training was declined because of distance and Jeff Morman's
              unwillingness to pay for hotel accommodation and travel. Per information provided by
              TYAD, Nguyen Vincent went to Bolingbrook Illinois (750 miles) for a training, Bryan
              Causer went to El Suganda CA, Joseph Martino, Corey Sheakoski, George Wolfe and
              Michael Dec went to Orlando FL and Corey Sheakoski went to Needham. MA

4/1/2010      Response to Jeff Morman's rebuttal dated 21 Sep 2010 (Page #332) Bullet #3 1 April
              2010: It states that I did not give 15 days advanced notice required by Training
              department. When Training responded they did not mention anything about it being late,
              all they mentioned was that the signature page was missing and at that point they knew
              the start date and they did not state it was too late. I did not see any document from
              Training that they were denying it because it was too late.
              Examples of training approved with less than 15 days advance notice:
              1. Curt Lauffer had training approved on 6/16/2010 for a course starting 6/21/2010 (page
              #446)
              2. Martin Salitis had training approved on July 30th for a class starting Aug 11th 2009
              (page #486)
              3. Ronald Hazlett had training approved on Aug 11th for a class starting Aug 24th 2009
              (page #490)
              4.Donna Phillips had training approved on Aug 13th for a class starting on Aug 25th 2009
              (page #492)
              5. Ronald Hazleltt had training approved on Aug 10th for a class starting on Aug 24th
              2009  (page #494)
              6.Donna Phillips had training approved on Aug 13th for a class starting on Aug 25th 2009
              (page #497)

              Also, a training request that I submitted on Sep 16th 2010 for a training that starts on
              October 4th 2010 (18 days in advance), Jeff responded on Sep 21st 2010 (only 13 days in
              advance, the same day he was defending himself with his rebuttal) that he'll approve this
              training after I give him a hard copy. He waited until 13 days from the training date only
              to ask for a hard copy and he was going to approve EVEN later. There has never a need
              for a hard copy in the past. Eventually, I do not know when, it is was approved much
              later, Training department processed the request successfully and timing was not an
              issue. I went for the training, only to find out that the training was cancelled.  This was
              one of the reasons for my suspension. To date, I am still not clear what I did wrong. It is
              clearly an act of retaliation.
              A training request was made on June 24th for training starting on July 6th. As of July 1st,
              Training requested signature page to process, and they did not raise any issue that it was
              too late or it was only 5 days before the training date.
4/2/2010      The information on the draft PIP (Page # 284 ) is too generic and repetitive. It does not
              include any specific details in spite of MER asking for specifics. In the final PIP (page #286)
              the only specific information with dates is Jeff Morman's meetings with Raja. He was
              UNABLE to provide any specifics on deficiencies, even when requested! which suggests
              that Jeff wanted to put me on PIP even though there was no specific reason to do so.

| | | |
|---|---|---|
| 4/10/2010 | Training titled "Introduction to PRO-E Wildfire 4.0" scheduled for April 12th 2010 was cancelled by Jeff Morman. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 6/4/2010 | Jeff Morman recommended that I be put on PIP at GS-802-7 technician position (creating the worst impression about me in a new group) even BEFORE I was working as a technician. PIP is given only when someone doesn't perform atleast 6 months AFTER actually starts working at that level. This is obviously planned, as said in the letter. Also Jeff can only provide the facts on how I performed and not tell the other suppervisor what action to take. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 6/18/2010 | My demotion was initiated from GS-9 to GS-7 level. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 6/18/2010 | My demoted was initiated from GS-830 (Mechanical Engineer) to GS-802 (Technician) position. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 6/18/2010 | My removal from ladder position was initiated. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 6/18/2010 | My removal from acquisition role was initiated (I have met all the qualification per DoD 5000.52-M to hold this position). It is a discrimination based on national origin, age, religion and race. | National Origin |
| 6/24/2010 | Training titled "Introduction to PRO-E Wildfire 4.0" scheduled for July 6th 2010 was denied by Jeff Morman, because he would not pay for travel and stay. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 6/24/2010 | Jeff Morman denied my application to attend PRO-E training July 6 - 9 2010 in Ann Arbor, MI. This training was declined because of distance and Jeff Morman's unwillingness to pay for hotel accommodation and travel, even though it was a 4 day class as opposed to 5 day class with considerable reduction in cost for hotel accommodation and per diem | |
| 7/8/2010 | Training titled "Introduction to PRO-E Wildfire 4.0" scheduled for July 12th 2010 was cancelled by Jeff Morman. It is a discrimination based on national origin, age, religion and race. | National Origin |

| | |
|---|---|
| 7/8/2010 | Jeff Morman cancelled my PRO-E training July 12 - 16 2010. Jeff Morman stated (page 332 of file rajendran_artyad10jul03318_ROI_part1) that he found out from travel who found out from the car rental company that I could not secure a rental car.  On July 8th at 7:17 am Travel asked for my credit card number. I immediately replied that I did not have it with me "NOW"  because I left my credit card in my apartment.    At 7:39 am Amy Hauffman from Travel replied (page 550) stating she processed the reservation t  for picking up rental car on 8th and dropping off on 17 of July. I was going to pick up the rental car after work, around 4:30 pm. At 3:36 pm I was told to cancel my registration for the Pro-E course (page 547 of file rajendran_artyad10jul03318_ROI_part1). Jeff stated (page 332 of file rajendran_artyad10jul03318_ROI_part1) "I asked Mr. Rajendran how he planned to get a car as well as to secure/pay for a hotel without a credit card, he stated "I don't know". This is a lie. I had already secured a hotel reservation with my credit card (page 553) and I had to cencel it. He also stated on his rebuttal on 21 Sept 2010 that he never received my request for training and eventually said I am working on a project. It is also another lie. |
| 7/8/2010 | Jeff Morman stated (page 332) that he found out from travel who found out from the car rental company that I could not secure a rental car.  on July 8th at 7:17 am Travel asked for my credit card number. I immediately replied that I did not have it with me "NOW" because I left my credit card in my apartment.   At 7:39 am Amy Hauffman from Travel replied (page 550) stating she processed the reservation t  for picking up rental car on 8th and dropping off on 17 of July. I was going to pick up the rental car after work, around 4:30 pm. At 3:36 pm I was told to cancel my registration for the Pro-E course (page 547). Jeff stated (page 332) "I asked Mr. Rajendran how he planned to get a car as well as to secure/pay for a hotel without a credit card, he stated "I don't know". This is a lie. I had already secured a hotel reservation with my credit card (page 553) and I had to cencel it. |
| 8/20/2010 | Jeff Morman made it very difficult for me to rent a car for TDY trip in retaliation - 10 hrs from home requiring me to spend considerable time away from home. He stated his decision TWICE, knowing I will be in Michigan the previous day. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin, age, religion and race. |
| 8/23/2010 | Forgetting to sign in on Aug 23rd 2010 was made in to an AWOL,  1 week after the incident on Aug 30th 2010. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin, age, religion and race. A coworker George Galaydick forgot to sign in one day and was reminded by the Secretary at noon, but he was not suspended or given an AWOL. Union mentioned that the depot agreed to give signing in as OPTION to the employee, instead I was TOLD to sign in. |

The rows for 8/20/2010 and 8/23/2010 are each marked "Retaliation" in the right column.

| | | |
|---|---|---|
| 8/25/2010 | Jeff Morman fabricated a complaint that "Joe (Bilotta) informed me that he did the work himself as he got tired of waiting on engineering". Joe Bilotta said that he did not raise this as a complaint and only told that he did the work himself. Jeff Morman fabricated this. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin | Retaliation |
| 8/25/2010 | Jeff accused me of a complaint from Joseph Bilotta that he was "Joe informed me that he did the work himself as he got tired of waiting on Engineering". I asked Joe if it was true and he replied "All I said to Jeff on the phone was I did the task myself". Jeff used this lie is as one of the reasons for demoting me. | |
| 9/2/2010 | Jeff Morman denied my application to attend PRO-E training Sep 13 - 18 2010 in Ann Arbor, MI. I had requested this training following bad feedback (very minor and insignificant defects) from Jeff Morman on a PRO-E assignment. I showed that the cost comparison for all the training locations (Michigan being the 2nd lowest and Wayne being the highest) | |
| 9/13/2010 | I was replaced by a new newly graduated younger white, American, Caucasian engineer who was hired fulltime just 2 months ago who does not meet all qualification required to hold an acquisition position(DoD 5000.52-M) It requires successfully completing several exam and it would take over 2 years to complete. It is a discrimination based on national origin, age, religion and race. | National Origin |
| 9/20/2010 | Did not approve leave of absence to take the training on my own. | |
| 9/27/2010 | Jeff Morman always referenced in several written and verbal communications that I was a GS 11 even though I was a GS 9 at that time. I had to frequently correct him. Obviously his expectations and comments / feedbacks were based on the performance requirements for a GS 11. | |
| 10/4/2010 | Comp time for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not reimbursed per expense report submitted, It is a discrimination based on national origin, age, religion and race. | National Origin |
| 10/4/2010 | Hotel stay for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was under-paid per expense report submitted. It is a discrimination based on national origin, age, religion and race.(Management claims I did not make this trip) | National Origin |
| 10/4/2010 | Travel mileage for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not paid per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin | Retaliation |
| 10/4/2010 | Toll charges for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not paid per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (Management claims I did not make this trip) | Retaliation |
| 10/4/2010 | Per diem for a TDY trip to York, PA on 3rd Oct to 4th Oct 2010 was not paid per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (Management claims I did not make this trip) | Retaliation |

| | | |
|---|---|---|
| 10/7/2010 | Dave Dudzinsky bragged about Mr.Chupko using the "F...." word when speaking with me, during FFC. Mr.Chupko admitted that. Jeff Morman did not take any action on this, suggesting I deserve that. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin. Another employee used such language and was suspended for one day. However in this case, he was praised. | Retaliation |
| 10/7/2010 | Jeff Morman accused me of not checking in drawings every day in his email dated 10/7/2010 (Page # 269).<br>No one has this responsibility in PED and Jeff stated this in his testimony that no one PED works on Pro/E. Per my Position Description (PD), creating drawings is not in one of my responsibilities. Job assignments required significant amount of drawing work. Also, almost all of the complaints were related to drawing creations . | |
| 10/7/2010 | Page # 835 Jeff mentioned (Part 2) "I don't have a need for PRO-E in my branch" however, most of the complaints about me are regarding drawing creation. These two are in contradiction. He also stated (Page # 800) that "He is the only one in my group who knows PRO-E". The other in the group do not know PRO-E and did not create any drawings. However all the complaints were against me and not against any of the others in the group. | |
| 10/7/2010 | I started with TYAD on March 15th 2009. Jeff Morman started with TYAD around April 20th 2009. Until then Dave Dudzinsky was my Supervisor for approximately my first one month. My first month was pretty much spent on New Employee Orientation and taking several mandatory training courses before I could access and start using government computers. I do not recall being given any assignment. Dave Dudzinsky stated "I said you (Jeff Morman) have to supervise him". There is no basis for Dave Dudzinsky's comment. Obviously he has something to gain from playing along with Jeff Morman. | |
| 10/7/2010 | During the first   FFC investigation, the questions the investigator Noella Lahaie asked me was like a prosecutor interrogating a suspect. When she asked questions to TYAD, they were very light and leading. I was not given any opportunity to explain anything from my side whereas she obtained all the information only from TYAD side. It was clearly biased. | |
| 12/4/2010 | Comp time for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 was not reimbursed per expense report submitted. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin | Retaliation |
| 12/4/2010 | Per diem for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010 was under-paid. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin | Retaliation |
| 12/4/2010 | Reduced reimbursement for travel mileage for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (by altering my travel expense form) | Retaliation |
| 12/4/2010 | Reduced reimbursement for hotel stay for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010. It is a to discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (by altering my travel expense form) | Retaliation |

| 12/4/2010 | Reduced reimbursement for toll charges for a TDY trip to Wayne, PA on 28th Nov to 4th Dec 2010. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin (by altering my travel expense form) | Retaliation |
|---|---|---|
| 12/9/2010 | Administrative leave for the travel time to attend a federal job interview at Picatinny, NJ on 9th Dec 2010 was not changed from annual leave to administrative leave, due to discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin. | Retaliation |
| 1/11/2011 | Jeff Morman gave me 3 day suspension on 11 Jan 2011, for (a) Unattended training, (which I totally deny all the charges / any wrong doing with evidence) and (b)forgetting to sign-in in the roll call in the morning on 23rd Aug 2010, which is not the same as AWOL, claiming it to be an AWOL (1.5 hours). I pleaded guilty for forgetting to sign and requested to be pardoned since it was my first offense and assured that I will never repeat it. My request was denied. AR 690-700: chapter 751, Table 1-1: Table of Penalties for various Offenses does not list forgetting to sign-in as an offense. However I was suspended. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin, age, religion and race. | Retaliation |
| 1/11/2011 | My suspension was purposely made Tuesday - Thursday requiring me to travel 10 hours each way just to work on Monday and Friday. It is a discrimination based on retaliation for filing EEO complaint on August 18th 2010 and national origin. | Retaliation |

## V.    DAMAGES

89. The plaintiff adopts and re-asserts each and every allegation previously stated as if fully set out herein.

90. The Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish, and loss wages (both back wages and future wages), lost benefits, as a consequence of the defendant's unlawful conduct.

91. The Plaintiff is seeking an unspecified amount of compensatory and punitive damages to be determined by the jury.

**_Addendum for (IV) Relief_**

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.      Enter an Order requiring the Defendant to make the Plaintiff whole by awarding him reinstatement, lost wages (both back pay and future pay) plus interest, compensatory and punitive damages, loss of benefits, including retirement, pension, seniority, and other benefits of employment.

2.      Compensation that was listed as in the EEOC "complainant's amended prehearing statement" attached and shown here below:

> (Regardless of the outcome of this trial if the defendant is acquitted of discrimination) I am requesting that the EEOC order dated 2 Feb 2013, must be complied with, including
>
> a. Written apology from TYAD for using swear words when speaking to me and bragging about it during FFC on the record.
>
> b. Re-instatement of my grievance through the Union submitted on 6 Jan. 2011.
>
> c. Re-instatement of my status-quo position, if defendant is acquitted of discrimination, 108270-2086359 GS-802-07 technician in PED C4ISR Maintenance Engineering Division.
>
> d. Lost wages because of the delay in executing the original EEOC order dated 31st Jan. 2013.
>
> e. Lost wages due to Non-Compliance of the original NSA (January 21st, 2011, since signing of NSA till the original order is re-instated).
>
> f. Reimbursement of all un-compensated/under-compensated travel related expenses.
>
> g. Provide unpaid comp time for TDY and for attending federal job interview

h. Reimburse cost incurred by me including but not limited to attorney fees, travel costs and hotel accommodation for reinstating EEO the complaint.

i. Per the EEOC order, the administrative leave was converted to leave without pay (LWOP). With that, I am eligible for all the benefits as an employee. TYAD included this amount to be paid back by me in order to reinstate the EEO complaint. This amount must be paid back to me.

j. TYAD offered me an incorrect (non-status quo) position which I had to resign. TYAD must pay my benefits as an employee from the day I signed the NSA until they offer the original status quo position.

k. Reverse the change of Service Computation Date??? (March 2005)

l. TYAD has to pay me the cost of my relocation from Michigan (home) to Pennsylvania (TYAD) twice, since they offered me an incorrect (non-statuesque) position.

m. Reinstate union grievance.

n. TYAD should not have removed me from ladder position. TYAD should place me in ladder position

o. TYAD should not have removed me from acquisition role. TYAD should place me in acquisition role.

2. Loss of income from employment

a. On March 15th, 2010, I should have been promoted to GS-830-11 without competition per my FPL.

b. Demotion and negative comments in the OPF, AWOL and suspension on the record at TYAD led to failed job interviews (GS-830-14 position) and ruined any possibility of employment, both Federal and private industry jobs. I did not get selected for the GS-830-14 position at TARDEC even though I was a successful GS-830-13 (equivalent NH3) employee because of the reasons below:

i. Late notification from TYAD about the interview.

ii. Failed notification from TYAD about the interview since I had provided my TYAD contact information (email id and phone number) for all the applied positions

iii. I did not have the competitive advantage due to lack of training/certification.

29

iv. Discrimination and my reputation being ruined in the OPF with AWOL, suspension, and negative comments

v. TYAD abruptly removed access to federal emails, so I could not receive any invitation to attend interviews.

vi. TYAD abruptly removed access to voice mail, so I could not receive any notification about job interviews

vii. Above all, demotion from GS-830-09 to GS-802-07 (engineer to technician)

All W2s showing my only income earned after the discrimination, are attached.

c. Other lost job opportunities (unknown) resulting from the below:

i. Abrupt removal of access to US Army email messages, both online and archived,

ii. Access to US Army Voice Mail messages immediately following NSA signed Jan 20, 2011.

iii. TYAD also wiped my hard drive clean immediately following NSA. On March 11 2011, TYAD communicated via email that they will provide me email access if I agree to waive my rights to pursue formal or informal action in any forum concerning the email matters resolved by this agreement and I agree that these email matters will not be made the subject of future litigation or complaint, formal or informal proceedings including but not limited to meetings, discussions, REDS, grievances, or any process regardless of how informal. I did not sign the waiver because I was not in agreement with the conditions. On 28 Oct 2011, I drove to TYAD, PA to access my email and retrieve all the information from the hard drive. TYAD Security let me in, however kicked me out immediately before I could even access my computer as soon as Management learned that I was in the premises.

I seek to be compensated at GS-830-11 from March 15th, 2010, till March 2011 and at GS-830-14 from then onward.

3. I seek to be offered a GS-830-14 acquisition position at TYAD

4. TYAD to offer all denied training

5. Annual Leave going forward for any federal position should be calculated based on original SCD date

6. Compensation for significant decrease in retirement income I am seeking the difference in retirement benefits due to loss of employment and difference in SCD date including but not limited to

a. Pension benefits

b. 401K, TSP (Thrift Savings Plan) and any such benefits

7. All Attorney fees from 2011 to present including re-instating of my complaints after NSA was breached by TYAD.

8. Travel Expenses related EEO case including multiple trips to meet with attorneys.

9. Costs related to relocation from Michigan to Pennsylvania two times (2009 and 2013) and whenever I join TYAD again.

10. Dismissal of all the personnel who are found guilty of discrimination if they don't have the minimum qualification required for the position, they are in.

3.     The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

Raja Rajendran

Dated: April 8, 2022

31



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Raja R. Rajendran, a/k/a
Dan R.,[1]
Complainant,

v.

Christine Wormuth,
Secretary,
Department of the Army,
Agency.

Request No. 2021003844

Appeal No. 2020004801

Hearing No. 530-2014-00136X

Agency No. ARTYAD10JUL03318

<u>DECISION ON REQUEST FOR RECONSIDERATION</u>

Complainant requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in <u>Dan R. v. Dep't of the Army</u>, EEOC Appeal No. 2020004801 (May 25, 2021). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. <u>See</u> 29 C.F.R. § 1614.405(c).

On August 18, 2010, Complainant filed an EEO complaint alleging that the Agency subjected him to harassment and discrimination on the basis of national origin when:

1.  Complainant was continually denied training;
2.  On February 24, 2010, Complainant's registration for a Pro/Engineer Data Management class was denied;

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

3.      On three separate occasions (February 22, 24 and March 2, 2010) Complainant's requests to take an on-line class titled Program Management Tools were denied;

4.      On April 1, 2010, Complainant's registration for the Introduction to Pro/Engineer Wildfire 4.0 class (scheduled for April 12, 2010) was cancelled;

5.      On June 24, 2010, Complainant's registration for the Introduction to Pro/Engineer Wildfire 4.0 class (scheduled for July 6, 2010) was cancelled;

6.      On July 8, 2010, Complainant's registration for the Introduction to Pro/Engineer Wildfire 4.0 class (scheduled for July 12, 2010) was cancelled by his first-line supervisor;

7.      Complainant's December 9, 2009, request to take a class at Wilkes University titled PE in Mechanical-Concentration in Heat and Mass Transfer was denied; and

8.      Complainant was downgraded from the position of Mechanical Engineer, GS-0830-09 to the position of Engineering Technician, GS-0802-07, effective June 8, 2010.

Complainant subsequently amended his complaint to include the allegation that the Agency subjected him to harassment on the bases of national origin and reprisal for prior protected EEO activity when, on December 15, 2010, he was notified of a three-day suspension.

Complainant requested a hearing before an EEOC Administrative Judge (AJ). The AJ held a hearing and issued a decision finding that Complainant failed to prove that the Agency subjected him to discrimination as alleged. The Agency issued its final order implementing the AJ's decision. Complainant appealed, and the Commission's prior decision affirmed the Agency's decision.

In his request, Complainant provides no evidence to warrant granting his request. The Commission emphasizes that a request for reconsideration is not a second appeal to the Commission. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110) (Aug. 5, 2015), at 9-18; see, e.g., Lopez v. Dep't of Agric., EEOC Request No. 0520070736 (Aug. 20, 2007). Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not done so here.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 2020004801 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

3                                                    2021003844

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

October 12, 2021
Date